## SUCCESSION OF HARKINS.

The property of a succession is the common pledge of the creditors, except so far as privileges have been lawfully acquired.

An administrator is the trustee of the creditors; his first duty is to them; he is bound to watch over their interests.

An attorney at law will not be allowed to testify as to communications made to him by a client in the course of his professional employment, unless the client himself consent to their disclosure.

Parol evidence of declarations of a mortgagee is admissible to establish the fraudulent character of a mortgage, when offered by one not a party to the act. The weight to be given to such proofs, goes to the effect, and not to the admissibility of the evidence.

If a creditor of a succession choose to show that he has combined with the administrator to injure other creditors, no rule of law will prevent him from doing so, nor the creditors from availing themselves of the legal consequences in their favor.

Although, under our laws, an attorney at law is a competent witness for his client, the position of an attorney offering himself as such is one of extreme delicacy both to the witness and the court; and it is always desirable, for the harmony of the profession, the independence of the bench, and the public confidence in the administration of justice, that an attorney should not be a witness, except in extreme cases, when all other means of proof are impossible; and then the attorney should withdraw from professional participation in the cause.

| 2 | 923 |
|---|---|
| 106 | 300 |
| 2 | 923 |
| 114 | 67 |

| 2 | 923 |
|---|---|
| 125 | 189 |
| 125 | 541 |

APPEAL from the District Court of Claiborne, *Taylor*, J. *Evans*, for the appellant. *A. Lawson*, for the opponent. The judgment of the court was pronounced by

SLIDELL, J. In April, 1845, *Veeder*, as administrator of *Harkins*, filed an account of his administration. He states payments of several claims made by him, and a mortgage claim held by himself individually for $6,240 and interest, evidenced by the notes of the deceased, and a mortgage executed by him in *Veeder's* favor. He also gives the estate credit for various sums of money and notes received by him from sales of property of the succession, stating the whole amount of notes, cash, and assets that have come into his hands at $5,850. He alleges that the debts set forth in the account rank in the order in which they appear, that they were privileged debts against the succession, and that he has paid them; that there are large amounts of money owing by the estate to different persons as ordinary creditors, but that he has not placed their debts on this statement or account, as there are no funds to pay the ordinary creditors, the entire property having been absolved by the privileged debts. He prays for the homologation of the account, and to be dismissed from the administration; also for judgment in his favor for the balance due him as exhibited by the account, and for the recognition of his mortgage and privilege. The account was accompanied by certain vouchers, among which is one show-

ing that the administration had given *Robinson* certain mortgage notes, proceeds of sale of the property of the succession, on account of his claim, and had taken from *Robinson* a bond of indemnity, with a surety, to hold *Veeder* harmless from any injury he might sustain in consequence of such transfer to *Robinson.*

To the account and petition of the administrator, *Robinson* filed an opposition. He represents that he is a privileged creditor of the succession, as the holder of a judgment for $2,070 and interest, rendered and recorded before the death of the deceased, by which he acquired a privilege on all the real estate and slaves of the deceased, which took effect on the 27 May, 1840, the date of registry. He opposes the allowance of any of the items charged by the administrator in favor of any other creditors, and alleges that no tableau of distribution has ever been homologated authorising their payment, nor any judicial authorisation in any way obtained with regard to such claims and their payment. He opposes, specially, the claim of *Veeder*, alleging that the deceased never received any consideration for the notes held by the administrator individually; that they were given in fraud; that if there was any indebtedness of the deceased to *Veeder*, it did not exceed $1,860; that *Veeder* had promised the opponent that he would not claim a privilege over him for said amount of $1,860; and that if the opponent would not bring an action to annul his mortgage, he would share *pro rata* with him, and upon the basis of $1,860 for *Veeder's* claim; and that, in consideration of this promise, he did not bring an action to annul the mortgage in favor of *Veeder*. He prayed for the disallowance and rejection of the account, and for judgment for his claim, with privilege. The administrator answered the opposition by a general denial, and plea of the prescription of five years against the alleged right and claim of *Robinson* to annul the mortgage.

At the trial of this opposition, *Robinson* offered in evidence the judgment in his favor, and the certificate of its registry. The judgment appeared to have been rendered on confession. The *procès-verbaux* of sales of the property of the succession were also offered. It was admitted, "that the legal notices were made by the administrator." It was also admitted that one *Sarah O. Madden*, had a recorded judgment prior to *Veeder's*, and that the judgment rendered in the cause was not to prejudice her rights. The administrator offered his account and vouchers, including the notes of the deceased and the mortgage in *Veeder's* favor. The certificate of registry of this mortgage, appended to a copy of the mortgage which was passed before the parish judge, states that "it is a true and correct copy taken from the original act on file and of record in my office"; but it does not state whether it was recorded in the mortgage book. The testimony of a witness, who is acknowledged to have been an attorney at law, was offered and rejected. The purport of his testimony was that, in 1840, the witness, at the request of *Veeder* and *Harkins*, drew up the form of an act of mortgage from *Harkins* to *Veeder*, on several slaves and a tract of land, to secure the payment of $6,000; that, he thinks, *Veeder* was the creditor of *Harkins* for about $1,800 only, but that *Veeder* was to pay some other debts for *Harkins*, which would make an indebtedness of $3,000, and that the object of the mortgage was not only to secure *Veeder*, but to protect *Harkin's* property from being seized by *Robinson*, who had then sued him, and was about to obtain judgment at the term of the court then in session. There was also an admission that *Veeder* had made *Robinson* a partial payment, in notes which belonged to the succession. There was also offered the testimony of

*Harkins'* widow, going to impeach the existence of the indebtedness acknowledged in the mortgage. This testimony was rejected. The attorney and counsel of record of the opponent *Robinson* was also offered as a witness, and notwithstanding the exception of *Veeder*, was received. He states that he called upon *Veeder* and threatened him with a revocatory action to set aside the mortgage, unless he made some arrangement about it in favor of *Robinson*; that *Veeder* said, that he would not claim more than was due to him, which was about $2.500 ; that *Robinson* should have the benefit of an equal privilege with him; and that they should be paid *pro rata* for what was really due ; that, in consideration of this understanding, in which *Robinson* acquiesced, the revocatory action was not brought; that he received the partial payment in notes for his client, in carrying out this agreement. It is also proper to remark that we find no prayer for an order of publication, nor any order to that effect, nor any appearance at the trial by other creditors.

Upon these proceedings and evidence the court below rendered a judgment, sustaining the opposition of *Robinson*, as to a portion of the debts paid, and as to the claim of *Veeder* by reducing it to $1.850, placing the two parties litigant on an equal rank as creditors, establishing the amount due to *Robinson*, and decreeing their claims to be paid *pro rata* out of the proceeds of the sales of the slaves of the succession. The rights of *Sarah O. Madden* were reserved by the decree. From this judgment *Veeder* has appealed. He claims a preference over *Robinson*, or at least that the amount allowed to *Robinson* should be reduced. The appellee in his answer to the appeal prays an amendment of the judgment in his favor, so as to allow him the whole amount claimed by him.

We have been thus minute in our statement of this case, because we have come to the conclusion that we cannot grant the prayer of either party, but must remand this cause for further proceedings.

The property of a succession is the common pledge of the creditors, except so far as privileges have been lawfully acquired. An administrator is the trustee of the creditors; his first duty is to them, and his imperative obligation is to watch over their interests. The law has carefully defined the special duties of the administrator with regard to the distribution of the funds of the estate, &c. A tableau of distribution must not only be filed, but its filing published, so that all creditors may have an ample opportunity to present their rights; and the same publicity must precede an administrator's discharge. A judgment of the court rendered after a strict observance of the formalities prescribed by the Code, is the warrant of the administrator for paying creditors. We cannot, with any propriety, take the loose admission made by the administrator at the trial, as proof that these formalities have been fulfilled, in a case where, according to his own statement, the estate is insolvent, and a preference is claimed by himself, which exhausts the funds in his hands; to say nothing of the state of facts presented in this cause. Nor. as regards the opponent, who has received a partial payment, without any order of court, out of the funds of the estate, under the circumstances stated, can we hold that there is sufficient evidence that the tableau has been duly advertised. His judgment may have been upon a just debt; but its payment can only be enforced contradictorily with the other creditors, upon due publication. There are cases in which it is the imperative duty of the court to interpose its authority, even when not called upon to do so by the parties immediately before it.

·In·remanding this cause we shall express no further opinion ·upon the facts presented, nor the legal consequences of those .facts upon the rights of the parties. They can be discussed contradictorily with the other creditors of the estate, who are not now before us. It is proper, however, to notice some bills of exception, presented by the record, with the view to simplify and facilitate the future proceedings in this cause.

A bill of exceptions,:taken by *Robinson*, states·that he offered the testimony of the.attorney at law, taken under commission.as already stated, .which ·was objected to:by *Veeder*, .upon the ground that the information was obtained by the witness:from *Veeder* and *Harkins*, in a communication .made by them to him as.an.attorney at law, which objection was sustained by.the.court. We are not able to;say with perfect certainty, under the case as presented, whether the attorney was·employed by both parties. If he was, he ·was incompetent to state what was communicated to him by either of them in the course and business of .his professional .employment. The law protects such;communications, and " the seal of .the law once fixed upon them remains .forever, unless" removed by the party himself."

It appears by .another bill of exceptions " that *Robinson's* attorney offered himself as a witness, ·to .prove an agreement .between him and *Veeder*, that *Veeder* .was not to .claim the benefit of his mortgage, that .*Veeder* acknowledged that *Harkins* only owed him about $1,800, and that in.paying the debts of the .succession *Robinson* should come in *pro rata* with him, *Veeder*, according to.the amount of their claims; to which testimony defendant by his counsel objected,.on the ground that parol testimony could not be admitted to contradict a notarial act of sale ; that it could not be received to annul a mortgage evidenced by .a notarial act, after twelve months had elapsed from the date of .*Robinson's* judgment; and, on the further ground that, if a fraud was attempted to be practiced by *Veeder*, *Robinson* became .a .participater therein, and he cannot, now, in.a court of justice, avail himself of any benefit resulting from his own turpitude" ; which objection the court overruled.

We are of .opinion that the creditor, *Robinson*, had a right to show the declarations of *Veeder*, that the whole.mortgage debt had never existed as declared in.the.act. *Robinson* was not a party to the act, and the evidence went to show fraud, for which .purpose oral ·evidence was clearly admissible. The weight.to be given to proof of oral acknowledgments, was a matter which concerned the weight.of the evidence, and not its admissibility.

Whether the facts stated.established the *turpitude* of the party.offering the testimony, we do not consider it necessary now to determine ; but .upon a tableau of distribution, which is .practically a *concurso* of creditors, if a party chooses to show that he has combined with the administrator to.injure other creditors, we know of no rule of law that will prevent him .from doing so, nor the creditors from availing themselves of its legal consequences in their favor.

The argument of .counsel has pointed to the fact that the witness was the attorney of record of the party for whom he offered himself, and to his testimony as being that on which the cause turns. In the view .which we have taken of this case, as one in which we are not finally acting, we are not called upon to discharge the disagreeable duty of .weighing this testimony. But we take this occasion to observe, as an imperative act of judicial duty, that although an attorney at law is under our laws a competent witness for his client, yet the position of an attorney thus offering himself as a witness is one of extreme deli-

cacy to the witness and to the court; and that it is always desirable, for the harmony of the profession, the independence of the bench, and the public confidence in the administration of justice, that an attorney should not be a witness, except in extreme cases, when all other means of proof are impossible; and then, as it seems to us, the attorney should withdraw from professional participation in the cause. So far as the bench is concerned, it is a duty of the most painful nature to be called upon, as we sometimes have been, to weigh the evidence of a member of the bar.

It is therefore decreed that the judgment of the court below be reversed, and that this cause be remanded to the court below for further proceedings in the matter of the succession of *William Harkins*, upon due publication of notice of the tableau of distribution filed in this cause, and according to law; the appellee paying the costs of this appeal.