THE FARMERS CO-OPERATIVE EXCHANGE COMPANY OF GOOD THUNDER v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND.[1]

May 27, 1921.

No. 22,229.

**When verified pleading is competent evidence in another action.**
1. A pleading made and verified by a party in another action is competent evidence, so far as relevant, in an action to which he is a party.

**Charge to jury — what constitutes ratification.**
2. An instruction to the effect that, to constitute a ratification of a

[1]Reported in 182 N. W. 1008.

transaction, requires an acceptance on the part of the plaintiff of the fruits and benefits of the transaction, was, under the evidence, prejudicial to the rights of the defendant.

**Ratification of unauthorized act of agent.**

3. To ratify the act of an agent is to confirm, approve or sanction a previous act done in behalf of the principal without authority. There can be no ratification of a contract which could not have been made binding on the ratifier at the time it was made.

Action in the district court for Blue Earth county to recover $2,500 upon an indemnity bond. The case was tried before Comstock, J., and a jury which returned a verdict for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*H. V. Mercer & Co., H. L. & J. W. Schmitt* and *H. W. Volk,* for appellant.

*Ivan Bowen* and *S. B. Wilson,* for respondent.

QUINN, J.

Action to recover upon an indemnity bond issued by defendant to the plaintiff to cover loss by larceny or embezzlement through its agent, Emil O. Rosnow. Plaintiff recovered a verdict and from an order denying its motion for judgment or a new trial, defendant appeals.

Plaintiff is engaged in operating a grain elevator at Good Thunder, in buying, selling and handling grains for present and future delivery. Rosnow was employed as its manager, and as such had charge of its affairs, with authority to issue checks, buy, ship and sell grains and to hedge on the market so as to protect purchases, subject to the order of the board of directors and the president. On March 30, 1917, defendant, in consideration of plaintiff's application and the payment of $37.50 premium, executed its bond in the form attached to the complaint, whereby it obligated itself to reimburse plaintiff to the extent of $2,500 for such pecuniary loss as it might sustain by reason of any larceny or embezzlement on the part of such agent in connection with his duties between March 30, 1917, and March 30, 1918, at 12 o'clock, noon.

The books, records and auditing reports pertaining to plaintiff's business were placed in evidence. They showed that hedging transactions

and shipping of grain had been carried on with divers firms, including E. W. Wagner & Company, by such manager during the year 1916, and up to March, 1917; that profits and losses had been sustained thereon; and that hedges were outstanding at the time of the taking effect of the bond in question.

On April 11, 1917, car No. 18,843 was loaded with wheat, billed and shipped from plaintiff's elevator by Rosnow to E. W. Wagner & Company at Minneapolis, in the usual way. On April 26 and 28, Rosnow drew two checks against plaintiff's bank account in the State Bank of Good Thunder for $2,200 and $2,000, respectively, payable to E. W. Wagner & Company, or order, and transmitted the same to that firm at Mankato to cover hedges. These checks were presented to the bank at Good Thunder for payment on May 1, 1917. The cashier of that bank immediately notified Rosnow of the receipt of the checks and informed him that they would create an overdraft exceeding $4,000. Rosnow then called the directors of plaintiff together. The cashier appeared before the board with the checks, and informed it that to pay the same would cause an overdraft, and asked that they provide the funds therefor. The directors finally decided to make a draft on the John Miller Company, of Minneapolis, to take care of the checks, which was done. The Miller Company refused to honor the draft, and later the board raised funds sufficient for the purpose by the sale of stock.

On May 2 after arrangement had been made for the payment of the two checks, the president and two directors of plaintiff went to the office of Wagner & Company at Mankato, and demanded the return of the car of wheat or the proceeds of the sale thereof. Subsequently suit was brought by the plaintiff against Wagner & Company to recover the proceeds of the sale of the wheat, claiming that the same had been sold for and on behalf of the plaintiff. The defendant answered, claiming the right to retain the proceeds of the sale of the wheat to apply upon account then due it from plaintiff. Upon trial of the instant case defendant offered the complaint in that suit in evidence, which upon objection was ruled out. This ruling is assigned as error. Defendant further contends that the transaction pursuant to which the checks were given, was not covered by the bond, since the hedgings were outstanding at the time the bond took effect, they having been made in the regular

course of plaintiff's business. It further contends that the giving of the checks was ratified by the acts of plaintiff at the time payment was arranged for, and that the evidence in the case, taken as a whole, is not sufficient to sustain a recovery.

The bringing of the suit against Wagner & Company was authorized by plaintiff's board of directors. It was alleged in the complaint that "plaintiff's agent sold and delivered to defendant" E. W. Wagner & Company the car of wheat in question, and a recovery of the proceeds thereof was demanded. The offer should have been received as bearing upon the question whether the car was shipped by the agent in the ordinary course of plaintiff's business, and as bearing upon ratification of the agent's act. It is a well settled rule that a pleading made and verified by a party in another action, is competent evidence, so far as relevant, in an action to which he is a party. Siebert v. Leonard, 21 Minn. 442; Rich v. City of Minneapolis, 40 Minn. 82, 41 N. W. 455; Humphrey v. Monida & G. Co. 115 Minn. 18, 131 N. W. 498. A copy of the shipping bill upon which the wheat was transported is in evidence. It appears therefrom that the car was shipped from the Farmers Cooperative Exchange Company, at Good Thunder, Minnesota, on April 11, 1917, in apparent good condition, to E. W. Wagner & Company, at Minneapolis, per E. O. Rosnow, agent. The car was received by that company, and, after the difficulty over the two checks arose on May 1, plaintiff demanded return of the wheat from Wagner & Company, or the proceeds from the sale thereof, and subsequently brought suit to recover the proceeds. We are unable to discover any testimony in the record tending to show that Rosnow ever received any part of such grain or the proceeds derived therefrom. If he has never received the proceeds and did not ship the car to Wagner & Company for the purpose of having the proceeds applied on his past indebtedness, then he never embezzled the grain.

It is insisted that the proofs show conclusively that the transaction for which the checks were given was a gambling transaction and covered by the bond, while it is earnestly contended on behalf of defendant that they were given to cover hedges made in plaintiff's business prior to the date of the bond, and that by its acts at the time of arranging for the payment of the same plaintiff ratified the transaction.

If the checks were given to cover hedges made to protect plaintiff against loss on grain purchased, they were legal, notwithstanding the fact that they were payable to a party with whom Rosnow was not specifically instructed to transact business. Rosnow, as appears from the testimony of the president, was expected to protect his purchases of grain by hedging, and the mere fact that the checks were made payable and delivered to Wagner & Company, would not render them unauthentic. Nor would the fact, standing alone, be any evidence that they were unlawfully issued. The claim that Rosnow had no authority to ship grain to, or deal in any manner with, Wagner & Company, became an issue on the trial, and in relation thereto the court submitted to the jury whether the dealings with that company were ratified by plaintiff.

In this connection it may be noticed that the books, records, auditor's reports, his testimony and the files show that, during the preceding year, hedges had been made and grain shipped to that company. Plaintiff had arrangements with Carl Flo to audit its books every three months. His last report was made in February, 1917. There was testimony that there were about 14,000 bushels of grain in plaintiff's elevator in January, 1917; that it was difficult to obtain cars; that the grain was largely shipped out during the first two or three months of the year; that the market was very panicky; that the witness Flo found a 2,000 bushel hedge that had not been taken up when the grain was sold, and that he had reported the same to Mr. Ulrich, one of plaintiff's directors. He further testified, in effect, that when he started to make his audit report Rosnow had given him the books, including the ledger, grain book, check stubs, deposit book, all the letter files, statements and confirmations that had been received from grain brokers; that in the course of his examination he found reports on future trades in the files, and that they were turned over to him and examined in connection with the books.

In submitting the question of ratification the court instructed the jury, among other things, as follows:

"The failure to disaffirm such unlawful act and the taking and keeping of the fruits or benefits of such unlawful act will deny the plaintiff the right to recover against the defendant if it is found by a fair preponderance or greater weight of the evidence in the case that the plaintiff accepted the fruits or benefits of such transaction and adopted and

ratified the transaction by such use and acceptance thereof * * *
in the form suggested or by reason of the matters suggested, as the
jury shall determine from all the evidence in the case.

"And you do not find that notwithstanding such larceny the plaintiff
after notice thereof accepted the fruits and benefits thereof."

"If nowithstanding you shall find such larceny on the part of Rosnow
you shall find by a greater weight of the evidence in the case that after
knowledge or notice of the unlawful act or acts of Rosnow that the
plaintiff accepted the fruits and benefits of such unlawful act and ap-
propriated the same to its own use, then your verdict shall be for the de-
fendant."

This instruction, as we read it, is tantamount to saying to the jury,
that to constitute a ratification of a transaction requires an acceptance on
the part of the plaintiff of the fruits and benefits of Rosnow's dealings
with Wagner & Company. Under the evidence in this case the instruc-
tions must have been prejudicial to the defendant, as no benefits could
have accrued to the plaintiff from the acts claimed. To ratify is to
confirm, approve or sanction a previous act or an act done in behalf of
the party ratifying, without sufficient authority. A party may ratify a
contract only when it was originally made for him without authority.
There can be no ratification of a contract which could not have been
made binding on the ratifier at the time it was made. McArthur v.
Times Printing Co. 48 Minn. 319, 322, 51 N. W. 216, 31 Am. St.
653; Steffens v. Nelson, 94 Minn. 365, 102 N. W. 871; 31 Cyc. 1245,
1247, and cases cited.

If Rosnow made hedgings with Wagner & Company without authority,
but in such a way as to have been lawful if made in pursuance of author-
ity, then the same would have been capable of ratification. There was
evidence offered to the effect that the checks were given to cover past
indebtedness of Rosnow's. If such testimony were true and plaintiff's
directors authorized the bank to pay the checks and at the time had no
knowledge or notice of such fact, the jury might find embezzlement.
But, if the directors had knowledge or notice of that fact, there could
be no embezzlement. In other words, if, with such knowledge or notice,
plaintiff saw fit to honor the checks, it could not be said that Rosnow
embezzled the money so advanced. We discover no proof in the record

that any hedgings were made subsequent to the date of the bond. It none were made subsequent to that date, then the matter covered by the checks must have antedated the giving of the bond and the defendant would not be liable, if the transaction were ratified by the plaintiff. We think the instructions were prejudicial to the rights of defendant.

Reversed.