No.——

First Circuit

MIRE v. ZIEGLER COMPANY

(May 8, 1928.    Opinion .and Decree.)

. (*Syllabus by the Editor.*)

1. **Louisiana Digest—Explosives—Par. 3;
Negligence—Par. 4, 9, 14.**

There is no liability for injuries to children where dynamite caps were guarded with reasonable care in the roof of a house boat where there was no reason to expect meddling.

2. **Louisiana Digest—Explosives—Par. 3;
Negligence—Par. 4, 9, 14, 15.**

Where children find dynamite caps on a canal bank and are injured by playing with them, the owner of the caps is not responsible in damages if it is shown that he kept them in a reasonably safe place in the roof of a canal boat and none of his employees could account for their being on the canal bank, there being an independent act of the third person intervening and negligence of defendant if any could not be the proximate cause of the injuries.

Appeal from the Parish of Jefferson Davis.  Hon. Thos. F. Porter, Judge.

Action by Clemilee Mire, Tutor, against Ziegler Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Gremillion and Smith, of Crowley, attorneys for plaintiff, appellant.

Modisette and Adams, of Jennings, attorneys for defendant, appellee.

MOUTON, J.  Until about the middle of June, 1925, the defendant company was engaged in dredging a canal, a couple of acres from plaintiff's home.  About two weeks after the dredging machine had left there, Laurent Mire. then a little over five years old, found on the canal bank where the dredging operations had been carried on, several dynamite caps which he took to the home of the plaintiff.  He gave two to his sister, Laura Mire, who at that time was about seven or eight years of age.  Laura placed one of the caps on a brick, and struck it with a hammer.  The cap exploded, blew off a part of her left hand and so mangled the remainder of it, that an amputation had to be performed an inch or two above the wrist.  Plaintiff, in his capacity of tutor to Laura Mire, brings this suit in damages, asking the gross sum of $18,620.00 against defendant company for the injuries thus inflicted on his minor child.  The demand was rejected, and plaintiff appeals.

·The record shows that no other dredge boat operating in that section had ever come closer than one-half mile from the place where the caps were found by Laurent Mire.  The fact is, when the caps. which had been kept by plaintiff were exhibited in Court during the trial to defendant's foreman and other of its employees, there was no suggestion whatsoever on their part that they were not the kind of caps as those that were kept by defendant company.  The Court therefore concluded, and properly, that defendant company was the owner of the caps.

These dynamite caps, the evidence shows, formed part of the equipment for the dredging operations.  They were kept by Golden, foreman of the crew, and were used only under his instructions or supervision.

They were used to blow up stumps or other obstacles out of the canal. The first question presented for solution is whether the defendant was negligent in the storing of the dynamite caps. In answer to a question as to where the caps were kept, the foreman said:

"There was a 2x4 right over my bed, and I had a little strip nailed up there, so there would be no danger of jerking them out. They were kept in a regular dynamite cap box."

In answering cross-interrogatories on the same subject, Duhon, an employee of defendant company on the dredging work, says:

"These caps were kept on the plate or 2x4 strip holding up the rafters to the roof of the house boat, and a board was nailed inside the house boat, on the plate 2x4, to keep the caps from falling off, that is to say, the place where the caps were kept was boxed in from the inside. The house boat was about fifty feet behind the dredge. They were not locked up, but they were in a secret place where no one could find them except persons working around the house boat, and the house boat was always locked when we left it. No, they were not left around where anyone would pick them up and carry them away with them, unless they were familiar with the box or place where we kept them."

The record shows that Duhon, Petitjean, Golden, Ozra and Rodney, foreman, were members of the crew on the dredging outfit. It is also shown that Mrs. Petitjean, who was serving as cook for the crew, and her two small children, lived on the boat. There may have been other members in the crew, but there is no evidence to that effect.

The record is barren of any proof to show that any of the caps which were kept in the boat were carried or left by any members of the crew, by Mrs. Petitjean or her children, or by any other person, on the bank of the canal where they were found by Laurent Mire. The proof shows that the children of plaintiff visited the children of Mrs. Petitjean while the dredging operations were going on. The District Judge, in his original opinion rendered in the case, in referring to this circumstance, said:

"To store such highly explosive substance as dynamite caps in unfastened tin boxes in an open and exposed place on a house boat on which children lived, and which was frequented by visiting children, is negligence and is not such care as the law requires to be taken in the handling of highly dangerous explosives."

Counsel for plaintiff say in their brief, that the judge therefore found that the defendant had been negligent and did not take such care as the law requires to be taken in the handling of highly dangerous explosives. That is the real point at issue in this cause, say counsel. The Court though it held in its first opinion that the keeping of the caps in the manner stated, was negligence, did not say that this was the sole issue, but held that the circumstantial evidence had to be of a character sufficiently strong as to exclude every other reasonable hypothesis other than defendant's act was the proximate cause of the injury, citing several authorities in support of its position. The case presents, as we see it, two controverted issues. First, whether defendant was negligent; second, whether its act was the proximate cause of the injury.

In its second opinion rendered on an application for a rehearing, the Court said:
"A careful review of the entire case has led me to the conclusion that the record fails to show any negligence in the storing of the dynamite caps."

In refusing the rehearing the judge refers to several adjudications on which he bases his views in support of his conclusion that

defendant had not been guilty of negligence in the storing of these dynamite caps. In revising his original views on this subject, the Court, among several other citations, refers to the case of Finkheiner vs. Solomon, 224 Penn. 333, 74 Atl. 190, L. R. A. (N. S.) 1257.

In that case it appeared that the dynamite caps had been placed on a dark shelf in a barn where they were found by a child; one was exploded by him, inflicting injuries for which suit was brought. The Court said there was nothing wrongful in the placing of the caps in the barn, at the time and place where the box was placed; that it was not an improper place for the storage of the caps, and that the injury could not have been reasonably anticipated. Had the box been left where it was put by defendant, says the Court, no accident would have occurred.

In the case above cited the proof showed that the caps had been taken from the barn by that child that was injured, and still it was held that the defendant was not liable under the circumstances stated. In this case the caps were found by Laurent Mire, and were given on the same day to Laura, his little sister, some two weeks after the dredge boat had left for other parts. He found them on the banks of the canal, and it is therefore certain that they were not taken by him from the house boat; or by any other person therefrom, and given to him. In this case, the caps were in a regular dynamite or tin cap box as explained by the foreman. They were not locked up, it is true, but as testified to by Duhon, they were in a secret place where no one could find them except persons working around the house boat, and the house boat was always locked when the crew left it. They were kept in a small box, which was stored on the plate or 2x4 strip holding up the rafters to the roof

of the house boat, and in front of this box a board was nailed inside of the house boat on the plate mentioned to keep the caps from falling off. These caps were more safely guarded, and securely kept in the instant case than they were in the Solomon case above cited. In 25 C. J., Sec. 11, p. 187, we find the following on this question:

"No liability arises for injuries to children when the explosives have been guarded with reasonable care, or left where there was no reason to anticipate meddling."

It is not reasonable to say that the foreman of defendant could have reasonably anticipated that the small children of Mrs. Petitjean, who lived on the boat, or the little children of plaintiff, who occasionally visited there, would or could possibly meddle with these dynamite caps, secretly secured as they were on the strips holding the rafters to the roof.

In Peterson vs. Martin, 138 Minn. 195, to which the District Court refers, it was held that the placing of a box of dynamite caps on a plate in a granary nine feet ten inches above the floor was not in itself, an act of negligence. If there had been steps or other means by which a small boy might have readily reached the caps, the Court intimated that a different question might arise. In the instant case there is nothing to indicate that the children could have reached the plate in the house boat. The taking or removing of these caps from the house boat by any one of these children could not have been reasonably expected or foreseen by defendant. The fact is there is no proof whatsoever that they were ever removed by them or anyone else.

Even if defendant was negligent in storing the dynamite in the house boat, the next proposition presented for determina-

tion is as to whether the injury was the proximate result of the negligence.

In Mire vs. East Louisiana Railroad Co. 42 La. Ann. 385, 7 So. 473, the Court quoting from Weeks and Wharton, says:

"Whenever there intervenes the independent act of a third person, between defendant's negligence and the injury sustained and it affects the results, and is the immediate cause of the injury, the plaintiff cannot recover against the original wrong-doer."

In such a case says Wharton:

"If it had not been for the intervention of a responsible third party, the defendant's negligence would have produced no damage to the plaintiff."

The general reason being that, "Casual connection between negligence and damage is broken by the interposition of independent human action."

In this case the facts are not identical with those appearing in the 42 Annual, but the principle invoked is of equal application. There is no proof whatsoever, as we have hereinabove remarked, to show that the caps which were found on the bank of the canal by little Laurent Mire, were carried there by him, or by any member of the crew of defendant company, or by Mrs. Petitjean or her children. It is certain that these caps could not have left the boat of their own intrinsic power, and have found their way to the canal bank. It is therefore manifest that they got there through the intervention of human agency or action. By whom or how, is a question which may always remain shrouded in mystery. Be that as it may, it is certain that the connection between the asserted negligence and the damage which was actually suffered, was "broken by the interposition of independent human action." It is impossible in the instant case to hold defendant for the human agency which has

broken the casual connection between the negligence, if defendant were guilty of any, and the damage complained of. In such cases the general rule is that the sufferer must resort for recoupment against the originator of the intermediate cause, and has no recourse for the acts either of omission or commission of the original wrongdoer.

This doctrine applies where the injured person is a child, and to impose liability on the defendant, his act must have been the proximate cause of the injury. 25 C. J. 187-188. The District Judge in his opinion refusing the rehearing refers to the case of Eaton vs. Moore, et als., 111 Va. 400, 69 S. E. 326, where it was set up in the declaration that dynamite caps had been improperly stored in an out-house of defendant. In holding that the declaration was inherently defective, the Court said:

"The charge is that by reason of the caps being improperly stored and exposed, the children got possession of them, but whether possession was acquired from the outhouse by the unaided efforts of the children, or through some other agency is entirely conjectural.

"The possession may have been just as easily obtained through a way for which defendant was in no way responsible. An adult, for instance, may have possessed himself of the caps and delivered them to the children, or else laid them down in an exposed place where they were found and thus came into their possession, in either of which events there would have been an intervening, efficient cause for which the defendants were not answerable in damages."

In the instant case, the caps were found on the canal bank by Laurent Mire, and it therefore appears that they were not given to him by any one. This is true, but who was it that laid or dropped down these caps on that exposed place where they were found by that little boy, and thus came into the possession of Laura Mire, the in-

jured child? There was unquestionably an intervening and efficient cause which brought these caps there. The burden of proving this intervening and efficient cause which produced the injury, was upon plaintiff; also that defendant was guilty of negligence in storing the dynamite, but in which plaintiff has failed for the reasons hereinabove given.

Counsel for plaintiff endeavor to bring this case under the principle that governs where claims for damages are made for injuries inflicted by vicious or savage animals. On this point they refer us, among other citations along the same line, to the case of Vredentiery, et als., vs. W. J. Behan, 33 La. Ann. 643, where it appeared the plaintiff had been lacerated by an infuriated bear. In such cases, the Court said, it is the duty of the owners of such animals to keep them in such manner as to prevent them from doing harm. "There must be security against them under all contingencies," says the Court. Counsel also refer to Serio vs. American Brewing Co., 141 La. 290, 74 So. 998, where the Court said:

"One who harbors a dangerous animal on his premises, does it at his peril, and is answerable for all damages resulting from its escape."

It is obvious that animals of that character sometimes suddenly and unaccountably prompted by the impulses of their savage nature are liable at any time to break through their enclosures and commit depredations. They are by their nature dangerous, and evidently it is for that reason the Court said in Vredentiery vs. Behan, 33 La. Ann. 643, that there "must be security against them under all contingencies." Their owners are practically made insurers of the public against the attack of such animals.

Those that handle dynamite are not insurers. The caps must be kept in a reasonably safe place, but those who use them are not required to so keep them as to guarantee the public "against all contingencies." It is evident that such caps cannot escape from where they may be placed or lodged and become dangerous, except where through human intervention, they are removed or taken away and exploded. The cases are easily distinguishable, and the rule thus invoked by plaintiff has no application to the issues involved herein. The claim was properly rejected.