# JAMES FERRARO v. ROY TAYLOR AND OTHERS.
## LOUIS FERRARO v. SAME.
### O. H. GRAY AUTO LIVERY SERVICE, APPELLANT.[1]

March 20, 1936.

No. 30,758.

[1]Reported in 265 N. W. 829.

6

*Snyder, Gale & Richards,* for appellant.

*Ossanna, Hall & Hoaglund* and *Charles E. Carlson,* for respondents.

LORING, JUSTICE.

In a suit to recover for personal injuries the plaintiff had a verdict against the owner of a rented car, defendant O. H. Gray Auto Livery Service, which has appealed to this court from an order denying its blended motion for judgment or a new trial.

At about 7:30 o'clock in the evening of September 1, 1933, defendant Roy Taylor rented a Ford sedan from the corporate defendant O. H. Gray Auto Livery Service on the "drive yourself" plan. Taylor had proceeded only a short distance from the place where he procured the car when he ascertained that the windshield wiper was out of order and was not functioning; that there was excessive play in the steering device; that the brakes would not hold; that the foot accelerator would stick when pressed down and would not come back when the pressure was released. After several near accidents due, as Taylor claims, to the defects in the car, he was, shortly before ten o'clock that evening, driving northerly upon Central avenue in Minneapolis. While driving downgrade over a viaduct the accelerator stuck; the motor was racing; the brakes would not hold; the car would not respond to the steering wheel; the rain was beating upon the windshield, and his vision was obstructed because thereof and the failure of the windshield wiper to

function. As a consequence, so he claims, he lost control of the car; it speeded across the street to his left and smashed into a car driven by the plaintiff Louis Ferraro, causing severe injuries to Louis and also damaging his car. Taylor too was injured, and so was the car he was driving.

To recover damages for these injuries plaintiff, by his father as natural guardian, brought this action against Taylor and the other defendant. The father also brought action in his own behalf against the same defendants for expenses incurred by him for his son's medical and hospital expenses and for consequential damages. The cases were tried together below and have been similarly submitted here. Verdicts for both plaintiffs were rendered against the corporate defendant. But the jury by its verdict also found "in favor of the defendant Roy Taylor."

Defendant corporation, hereinafter referred to as the defendant, urges that it is entitled to judgment because (1) its negligence in failing to furnish a car free from defect was not the proximate cause of plaintiff's injury; (2) that its primary negligence, if such were shown, was "insulated" by the subsequent and independent negligence of Taylor; (3) that the jury's finding that the accident was not caused by Taylor's negligence compels a similar finding for it; (4) defendant also contends that it must have a new trial on the ground of misconduct of plaintiff's counsel in his argument to the jury.

■ We do not find ourselves in accord with the first three contentions of the defendant. The rule seems to be well established that if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury. 45 C. J. p. 934, § 493, and cases cited in note 68; Teasdale·v. Beacon Oil Co. 266 Mass. 25, 28, 164 N. E. 612, 613; Seith v. Commonwealth Elec. Co. 241 Ill. 252, 260, 89 N. E. 425, 24 L.R.A.(N.S.) 978, 132 A. S. R. 204; Carroll v. Central Counties Gas Co. 96 Cal. App. 161, 167, 273 P. 875, 274 P. 594.

In Teasdale v. Beacon Oil Co. 266 Mass. 25, 164 N. E. 612, the clothing of a guest in an automobile was negligently saturated with

gasolene by an attendant at a gasolene station. The car was equipped with an old-fashioned coil box which, when uncovered, exposed a spark of electricity when the car was cranked. The driver knew this, and also he apparently knew that the guest's clothing had been saturated with gasolene. Nevertheless he cranked the car with the top of the coil box off. The guest's clothing at once burst into flames. In a suit to recover for the ensuing injuries the oil company contended that the driver's negligence was the sole cause of the accident and insulated it from liability for the negligence of its employe in saturating the plaintiff's clothing with gasolene. The court said in holding the defendant oil company liable [266 Mass. 27]:

"In an action of this kind the defendant is liable for the natural and probable consequences of his negligent act or omission. 'The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury.' Lane v. Atlantic Works, 111 Mass. 136, 139, 140."

In Seith v. Commonwealth Elec. Co. 241 Ill. 252, 260, 89 N. E. 425, 24 L.R.A. (N.S.) 978, 132 A. S. R. 204, the court, while holding the intervening cause as being sufficient to insulate the defendant's negligence, laid down the general rule as we have stated it here and said:

"Where the intervening cause is set in operation by the original negligence, such negligence is still the proximate cause, and where the circumstances are such that the injurious consequences might have been foreseen as likely to result from the first negligent act or omission, the act of the third person will not excuse the first wrongdoer."

Certainly in the case at bar the intervening cause was set in operation by the original negligence, for the defendant company sent

Taylor out upon the street with a car in such condition that it might reasonably be expected to injure someone. See also Carroll v. Central Counties Gas Co. 96 Cal. App. 161, 167, 273 P. 875, 274 P. 594.

If the testimony of the defendant Taylor is to be believed, and evidently the jury based its verdict upon that testimony, the Gray company rented to Taylor an automobile in such a gravely defective condition that it was a menace to all other traffic on the highway. Defective in brakes and steering gear and without an effective windshield wiper, the car, if driven at all upon the highway, was likely to collide with any other vehicle thereon. In its then condition it was a dangerous instrumentality, and the only way in which Taylor could have got the car safely back to the Gray company was to have it towed by another vehicle. Obviously and contrary to the verdict of the jury, he was guilty of negligence in driving the car in the condition in which he found it.

The Gray company was negligent in furnishing him such a car, but it owed two distinct duties in respect to the car, one to Taylor growing out of its special relation to him to furnish him a safe and manageable car, and the other to the general public, which would necessarily be exposed to risk and danger from the negligent discharge of its duty to Taylor. Moon v. N. P. R. Co. 46 Minn. 106, 109, 48 N. W. 679, 24 A. S. R. 194; Collette v. Page, 44 R. I. 26, 30, 114 A. 136, 18 A. L. R. 74; Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 624, 117 So. 72, 61 A. L. R. 1333. It has been held that where the earlier tortfeasor ought to foresee the probability of the subsequent act which causes the injury he is not relieved from liability although that act may be unlawful or tortious. Certainly this must be the true and just rule, where, as here, the first tortfeasor participated in setting in motion the alleged intervening cause. The supreme court of Kentucky in Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 514, 271 S. W. 570, 39 A. L. R. 979, had a case before it where the oil company negligently mixed gasolene with kerosene in a retail merchant's tank and the merchant negligently sold the same to plaintiff's intestate. The court held the oil company liable because it should have antici-

pated that the merchant was likely to carelessly resell the mixture as kerosene to his customers, although he may have been aware of the mixture. Similar decisions were rendered by the same court in Watson v. Ky. & Ind. Bridge & Ry. Co. 137 Ky. 619, 126 S. W. 146, 129 S. W. 341, and Louisville Home Tel. Co. v. Gasper, 123 Ky. 128, 93 S. W. 1057, 9 L.R.A.(N.S.) 548. In the latter case the telephone company had placed a guy wire in an alley in such fashion that those driving vehicles through the alley, unless they were very careful, might run into such wire. In so doing the court held the telephone company negligent. A grocery wagon was negligently driven through the alley and against the guy wire, and as a result the wagon was overturned and the plaintiff, a pedestrian, was painfully hurt. The telephone company sought to escape liability on the theory that the intervening negligent act of the driver of the grocery wagon exonerated it from any liability for its prior negligence. The court held that the telephone company should have foreseen such an accidental or negligent act on the part of some driver which, coupled with its negligence, would result in injury to someone.

In the case at bar the Gray company rented the car to Taylor for the very purpose of driving it upon the highway, where it was a menace to all other vehicles, and if it had knowledge of the facts of which it ought to have had knowledge it knew that some accident to some other person using the highway was almost certain to result. It set in motion the very acts which it now claims should relieve it of liability. That being the case, the intervention of Taylor's negligence was insufficient to break the chain of causation.

We see a clear distinction between such cases as Childs v. Standard Oil Co. 149 Minn. 166, 182 N. W. 1000, and Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171. In Childs v. Standard Oil Co., while the point is not particularly discussed, it is quite evident that the company could not reasonably anticipate injury to anyone from the negligent use of the shovel which had become covered with kerosene. In Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171, careful analysis of the opinion indicates that this court took the view that while the contractor who constructed the electrical

installation was negligent, the intervening negligence of the village in neglecting for so long a period to inspect the wires for damage due to the elements could not reasonably have been anticipated and was an independent intervening cause sufficient to insulate the contractor's negligence.

■ The finding of the jury for defendant Taylor does not make the verdict perverse. The negligence of the Gray company was entirely distinct from that alleged against Taylor; and, while we regard the verdict in favor of Taylor as entirely without foundation and contrary to the conclusive proof, nevertheless it will be readily seen that it does not render the verdict against the company perverse. Had the accident occurred immediately after he left the garage before he discovered the condition of the car it will be readily conceded that there might have been a verdict in his favor and against the company. The negligence of the two defendants is therefore distinct although at the time of the accident it was concurring.

■ It is to be regretted that clients must suffer for the misconduct of their attorneys and that trial courts must try cases the second time on account of such misconduct, but it is the duty of such courts to keep control of trials and to prevent misconduct from vitiating a record. In the case at bar Mr. Ossanna in his closing remarks made a flagrant appeal to passion and prejudice, used intemperate language, and made statements not justified by the record. He unnecessarily testified as a witness, commented on his own testimony, and drew upon his own experience in personal injury cases in commenting upon the evidence. We shall not embarrass him or encumber this opinion by quoting his remarks. Courts are here to administer justice, not to award verdicts according to prejudice, and it is the duty of the trial court to see that lawyers do not arouse the passions or the prejudices of jurors. In this case it should have interfered on its own motion. Courts and counsel must understand that as long as conduct of this character is permitted and indulged in cases will have to be tried over again until they are fairly submitted.

■ Mr. Ossanna testified as a witness for the plaintiffs upon a very important fact issue relating to the absence of a windshield wiper. There was ample other testimony in the case to make that issue one for the jury, but Mr. Ossanna in his argument said that he was proud and happy to have been a witness. As said in the dissenting opinion in Peoples State Bank v. Drake-Ballard Co. 164 Minn. 175, 184, 205 N. W. 59, 62:

"The practice of attorneys of furnishing from their own lips and on their own oaths the controlling testimony for their client, is one not to be condoned by judicial silence. * * * The good name and deservedly high standing of the Minnesota Bar require that the practice be stopped, for nothing short of actual corruption can more surely discredit the profession. * * * By appearing in the dual capacity of counsel and witness, and then necessarily by argument urging upon the judge, as trier of the facts, the truth of their own testimony, * * * counsel for plaintiff have subjected themselves to the results which automatically attend such a spectacle, for a lawyer 'occupying the attitude of both witness and attorney for his client, subjects his testimony to criticism if not suspicion.' Ross v. Demoss, 45 Ill. 447 (449). 'In most cases, counsel cannot testify for their clients without subjecting themselves to just reprehension.' Potter v. Ware, 1 Cush. (Mass.) 519 (524)."

See also Succession of Harkins, 2 La. Ann. 923, 927; Onstott v. Edel, 232 Ill. 201, 83 N. E. 806, 13 Ann. Cas. 28; Frear v. Drinker, 8 Pa. 520.

The situation in the case at bar does not fall within any of the exceptions to the impropriety of counsel becoming a witness for his client in a case which he is trying.

Order reversed and new trial granted.

JULIUS J. OLSON, JUSTICE (concurring in part, dissenting in part).

I am in full accord with that part of the opinion which relates to the misconduct of plaintiffs' counsel. It is obvious that by no stretch of the imagination can such remarks be construed as anything other than prejudicial.

Nor do I find any difficulty in going with the majority in that part of the opinion wherein it is said that "where the intervening cause is set in operation by the original negligence, such negligence is still the proximate cause." But I do have difficulty, in fact find myself wholly unable, to agree that upon the facts in the instant case that rule is applicable. From what has been said respecting Taylor's knowledge of the defective condition of the automobile it seems clear that we have here an efficient intervening cause so that, even granting defendant's negligence, the intervening cause became the proximate cause and as such insulated defendant's negligence. Can there be any doubt that the causal connection between defendant's negligence and plaintiff's injury was broken by the interposition of independent human action? If that be granted, as I think it must, then he who has suffered injury must look for recoupment against the originator of the intermediate cause. He has no recourse for the acts of omission or commission on the part of the original wrongdoer. Mire v. Ziegler Co. 8 La. App. 640.

The following quotation from Cooley, Torts (2 ed.) p. 76, is appropriate:

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are *not wrongful,* the injury shall be referred to the wrongful cause, *passing by those which were innocent.*" (Italics mine.)

Taylor's state of mind when driving the car after knowledge of its defects conclusively shows that he acted perversely. (I am using the word "perverse" as the equivalent of "obstinate in the wrong; not disposed to be set right." Webster's New International Dictionary [2 ed.] 1935.) In his testimony he described the car as "a pineapple," an "old melon," and an "old wreck"; that "this car was just like all the rest of them I ever rented over there. There is none of them in shape." He "came near colliding" with a streetcar because the brakes would not work. At another time he thought he would have "to pretty near put it in reverse in order to stop."

Another near accident occurred while he was following another car, the foot throttle stuck, and he had to reach down with his hand to raise it. Fully aware of these many and serious defects, he nevertheless continued to drive this "old wreck" upon the busy streets of Minneapolis. The weather was rainy. Because of the claimed defective windshield wiper he had to stop and wipe off the windshield. Instead of taking the car back to the service company, he thought it was all right to drive it even if it was not "in shape"; it was not his "lookout" but the owner's "hard luck" if anything happened.

If Taylor had rented a gun from defendant and had also purchased a box of shells, informing defendant that he wanted blank cartridges (i. e., not loaded with shot or bullet), and had then proceeded to attend some gathering where a salute was to be fired but before doing so had tried out several cartridges and found that each contained shot or bullet, can anyone reasonably say, if under such circumstances he fired a shot, causing injury or death, that the original wrongdoer would still be liable? It seems to me too obvious for argument that such act of deliberateness on Taylor's part would be such efficient intervening human agency as would insulate defendant's original wrong. And the authorities generally support this view.

There is nothing new or novel in the present situation as to applicable legal rules. In the "squib case" (Scott v. Shepherd, 2 W. Bla. 892, 1 Smith's Leading Cases, 549, 7th Am. Ed. 754), decided in 1770, the original wrongdoer was held to liability because he set in motion an inherently dangerous instrumentality which, being thrown at another, was by the latter, to protect himself, met and thrown to still another, who did the same thing for his own preservation. The question determinative of result was whether the intermediate parties acted merely mechanically, by sudden impulse to avoid the squib exploding against themselves, or if they mischievously or inadvertently acted after opportunity to consider the risk. DeGrey, C. J. said [2 W. Bla. 899]:

"It has been urged, that the intervention of a free agent will make a difference; but I do not consider Willis and Ryal [the in-

termediate parties] as free agents in the present case, but acting under a compulsive necessity for their own safety and self-preservation."

It will be observed that the basis for liability of the original wrongdoer was properly based upon the theory that the acts of the other persons involved were involuntary, made at the spur of the moment "under a compulsive necessity for their own safety," and as such they were not "free agents," nor was such conduct on their part their voluntary physical acts. With some variations this rule has ever since been recognized in England as well as here. Thus in M. & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. ed. 256 (106 years after the decision in the squib case), the court said:

"The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, * * *. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

This court in Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 138, 50 N. W. 1034, 16 L. R. A. 203, said:

"There may be a succession of intermediate causes, each produced by the one preceding, and producing the one following it. * * * The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result."

And this seems to have been the consistent holding of this court ever since.

I shall not review all our cases bearing upon this subject. A few will suffice.

In Childs v. Standard Oil Co. 149 Minn. 166, 182 N. W. 1000, an employe of defendant had overfilled an oil tank in the basement of a building occupied in part as a store and another part as a hotel, thereby flooding the basement floor. Some of the employes of the store scattered sawdust and shavings on the spilled oil and scraped it into a pile with a shovel. Some time later Mrs. Horn, proprietress of the hotel, well knowing what had happened, used the shovel to fix the fire in the furnace. There was a burst of flame when she thrust the shovel through the furnace door. There, as here, it was claimed that the original negligent act was the proximate cause and that the subsequent acts of others concurred or assisted in bringing about the disaster set in motion by the original wrongdoer. This court had no trouble in holding (149 Minn. 169) "that the jury might properly have concluded * * * that, if a quantity of kerosene was spilled, as it was in this case, and was not promptly and carefully removed, a fire was likely to originate in the basement of the building." But, the court proceeded (149 Minn. 170): "If it only became injurious through some distinct wrongful act or neglect of another, the last wrong is the proximate cause, and the injury will be imputed to it and not to that which is more remote." In speaking of Mrs. Horn's acts in this regard the court of course came to the conclusion that she was negligent in doing what she did. "Her negligence and the negligence of the mercantile company's employes 'insulated' the original negligent act of the defendant from the injury and relieved defendant of liability." (149 Minn. 171.) That is the exact situation in the case before us.

Another case also of value here is Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171. There was evidence to sustain the jury's finding of negligence on the part of the contractor who had constructed the light distributing system for the village. And there, as here, the court was required to resolve the question "as to whether the negligence of the village was a new agency serving

[severing] causal connection between the company's negligence and plaintiff's hurt, or whether, on the other hand, such negligence simply concurred with that of the company so as to charge both defendants." (157 Minn. 235.) True, in that case there was serious and long continued neglect of duty on the part of the village to inspect and repair. But if the original wrong was the motivating cause, mere remoteness of time could not and did not preclude recovery. In the instant case there was no duty on the part of Taylor to inspect or repair the automobile. But there was an imperative duty resting upon him, immediately upon ascertaining its dangerous condition, to get the same off the highway so as not to be a source of danger. 1 Mason Minn. St. 1927, § 2720-34, makes it a misdemeanor on the part of anyone who shall "drive or move * * * on any highway any vehicle * * * not * * * equipped as required under this title." But that is not all. Under § 2720-3(b) it is provided that any person who drives a vehicle upon a highway in wilful or wanton disregard of the rights or safety of others and in a manner likely to endanger any person shall be guilty of a gross misdemeanor. So there was here not only a negligent act in the ordinary sense but a criminal wrong on Taylor's part which directly caused and brought about the disaster. The harm to plaintiff was the direct result of Taylor's misconduct. The negligence of defendant was the remote cause. His was the negligence that broke the causal connection between the negligence of the defendant and plaintiff's hurt.

In the late case of Guile v. Greenberg, 192 Minn. 548, 551, 552, 257 N. W. 649, 650, the Chief Justice speaking for the court said:

"The fact that damage might not have resulted but for plaintiff's placing himself in an exposed position does not necessitate a conclusion that his conduct was a proximate cause of the damage. If his exposed position resulted in injury only through some distinct wrongful act or neglect of another, the other's act is the proximate cause and 'insulates' the original conduct. The injury will be imputed to it and not to the more remote conduct. * * * Here as elsewhere in the law of negligence, the distinction between cause

18

and condition is to be made," citing Childs v. Standard Oil Co. 149 Minn. 166, 182 N. W. 1000.

Cases from other jurisdictions sustain our own. See Babcock v. Fitzpatrick, 221 App. Div. 638, 225 N. Y. S. 30, affirmed 248 N. Y. 608, 162 N. E. 543; Vining v. Amos D. Bridges Sons Co. Inc. 127 Me. 544, 142 A. 773; Case v. Miami Chevrolet Co. 38 Ohio App. 41, 46, 175 N. E. 224; Matijevich v. Dolese & Shepard Co. 261 Ill. App. 498; Seith v. Commonwealth Elec. Co. 241 Ill. 252, 89 N. E. 425, 24 L.R.A.(N.S.) 978, 132 A. S. R. 204. (The last cited case is also cited in majority opinion and extensively quoted. Obviously, the conclusion reached by the court does not sustain the result reached in the instant case.)

Plaintiffs cite and rely upon Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 117 So. 72, 61 A. L. R. 1333; Collette v. Page, 44 R. I. 26, 114 A. 136, 18 A. L. R. 74, and other cases of similar import. In the first cited case Mrs. Green had rented an automobile from the Saunders System. Because of defective brakes she was unable to stop at an intersection and ran into and injured plaintiff. There was no proof, however, nor was any claim made, that the bailee had knowledge of the defective condition of the car. That is the distinguishing feature between that case and this. The same is true in the Collette case. There the question arose upon demurrer. All the court determined and all that the case can be said to be authority for is that:

"One letting an automobile for hire, to be used on a public highway, with the steering gear in defective condition, is liable for injury to a traveler on the highway *by the machine becoming ungovernable because of such defects.*" (Italics ours.) 18 A. L. R. 74, headnote 2.

In Trusty v. Patterson, 299 Pa. 469, 471, 149 A. 717, the bailor-for-hire was held liable where the accident was due to defective brakes. There the bailee knew of the defect prior to the accident but, after discovering it, took the automobile back to the bailor and was told "to take it out anyway." Shortly thereafter the accident occurred. Naturally the court came to the conclusion, and properly

held, that the bailor-for-hire was a party to the wrong. It stood in the position of *particeps criminis.*

In Eklof v. Waterston, 132 Or. 479, 487, 285 P. 201, 204, 68 A. L. R. 1002, the bailor-for-hire was charged with negligence for letting an automobile with defective brakes. There the court came to the conclusion that at most defendant's connection with the case was "only a condition or circumstance surrounding the happening of the accident," and that plaintiff's injury was caused by the operation of the automobile by the bailee in possession.

In Mitchell v. Lonergan, 285 Mass. 266, 270-271, 189 N. E. 39, 41, a bailor was held liable for an injury caused by defective brakes. Liability was predicated and sustained upon the theory that, "liability continues if the mischief is attributable to the negligence *as a result which might reasonably have been foreseen as probable.*" Clearly defendant could not foresee or anticipate that Taylor would operate this vehicle in violation of statutory mandate. So to hold is to make defendant an insurer.

The testimony in defendant's behalf clearly shows that its servants and agents thought the car was in good shape for service. It is not to be presumed, and certainly there is no proof, that it knowingly or intentionally put an inherently dangerous instrumentality in the hands of Taylor.

The liability of a bailor for defects in property bailed is thus stated in 3 R. C. L. p. 148, § 71:

"But if a bailor is under any circumstances answerable to third persons injured by a dangerous article or substance let by him to another, it can only be when there is no intervening human agency which might have prevented the injury. So it has been held that a bailor or letter of electrical appliances is not liable to a third person injured on the premises where such appliances are used by his coming into contact with a wire charged with electricity, if the person to whom such appliances were furnished knew of the condition of the wire, and of the necessity for taking precautions to avoid harm to persons who might come into contact with it," citing Griffin v. Jackson L. & P. Co. 128 Mich. 653, 87 N. W. 888, 92 A. S. R. 496, and note, 55 L. R. A. 318.

As to liability of owner for negligence of one to whom car is loaned or hired, see annotations, 36 A. L. R. 1138, 68 A. L. R. 1009, 100 A. L. R. 920.

The only question determinative of ultimate liability is that of proximate cause. Granting that the evidence is sufficient to take the case to the jury in respect of defendant's initial negligence, likewise that defendant owed a duty to third persons, including plaintiff, the fact nevertheless remains that Taylor's misconduct was the proximate cause of plaintiff's injuries because his acts insulated and made for naught defendant's negligent acts or omissions. No other conclusion is possible unless this court is now to overturn and throw into the ash can the well considered cases of this court, reference being had to the Childs, Goar, and Guile cases, hereinbefore cited.

I am unable to find anything in the facts justifying the view that defendant's negligence constituted "a substantial factor" in bringing about plaintiff's hurt. See Peterson v. Fulton, 192 Minn. 360 (and authorities cited and discussed, p. 364), 256 N. W. 901, 903.

Counsel for plaintiffs have diligently searched for authority to sustain plaintiffs' cause against defendant; and so undoubtedly has the writer of the majority opinion. Aside from Teasdale v. Beacon Oil Co. 266 Mass. 25, 164 N. E. 612, and the Kentucky cases cited, not a single authority remains justifying the conclusion that liability may be enforced here against defendant unless we overrule our prior cases. The cases referred to, if to be followed, are entirely out of harmony with our own.

Not only does the majority opinion overturn our prior cases, but it virtually adopts the theory of liability imposed in cases where children suffer harm from explosives left in such fashion as to be accessible to them. The cases bearing upon that phase are adequately annotated in 43 A. L. R. 434, 49 A. L. R. 160, and 100 A. L. R. 451.

It is possible that by L. 1933, c. 351, § 4, our legislature sought to afford a suitable remedy under circumstances such as here exist. That act, however, is not applicable in any event as it did not come into effect until after the happening of this accident.

Judgment should be ordered for defendant notwithstanding the verdict.

