FRUGE, Judge ad hoc.
This is an action by plaintiff seeking recovery of damages for personal injuries claimed to have been sustained by him on August 29, 1946, at a pumping plant of the defendant in Jefferson Davis Parish, Louisiana. Plaintiff bases his right of recovery upon the doctrine of res ipsa loquitur but alleges, in the alternative, seven specific items of negligence on the part of defendant as the proximate cause of the accident in which plaintiff sustained his injuries.
The Trial Court dismissed plaintiff’s suit and he appeals.
Defendant admits that plaintiff was injured, denies that the doctrine of res ipsa loquitur is applicable to. this case, denies that defendant was guilty of any alleged act of negligence proximately causing the accident sustained by plaintiff and alleges that the accident was solely and proximately caused by four particular items of negligence on the part of the plaintiff himself. In the alternative, defendant alleges contributory negligence on the part of the plaintiff as a bar to any recovery. Further in the alternative, defendant alleges that the plaintiff was entirely familiar with all of the machinery in the pump house as well as the locale of the accident and deliberately placed himself in the proximity of such danger as existed on the premises and in the operation of the machinery itself and assumed all of the risks involved therein, which should bar any recovery herein.
The facts are that during the 1946 crop season plaintiff, Paul Lognion, farmed in *382 rice approximately 160 acres of land owned by defendant, Ansel Vernon Peters, under an agreement by which defendant was to furnish the land, seed and water, one-half of the fertilizer, and was to pay one-half the costs of weed pulling. In consideration therefor he was to receive one-half the crop raised.
A water well and pumping plant was located on the west side of this tract of land adjacent to ,a public road which ran north and south long said tract, and it was from this well that defendant obtained the water used in irrigating or flooding plaintiff’s rice crop. The pumping plant consisted of a Prim crude oil engine, well, pump and other equipment or machinery used in operating such a pump, all of which was enclosed in a frame house Or shed. The pump was located near the public road and immediately inside the main gate which formed the principal entrance to the 160 acre tract of land.
About 1:30 o’clock p. m. on August 29, 1946, defendant stopped the crude oil engine which operated the pump in order to make some repairs to the pump. He took some parts of the pump to his home where the repairs were made and he returned with the repaired parts to the pump house about 4:00 o’clock that afternoon. He asked his son, Mondell Peters, to assist him in starting the engine, so his son joined him at the pump shortly after defendant arrived there.
Plaintiff, who resided about one and three-fourths miles from the well noticed that the engine was not rünning, and some time between 4:00 and 5:00 o’clock that afternoon he left his house and proceeded toward the pump for the'purpose of assisting defendant in starting the engine. When plaintiff arrived at the pump Mondell Peters was inside the shed getting the engine ready to be started and defendant was leaving the pump house to go to an oil tank on the outside of the shed to pump oil.
Unless the crude oil engine which operated the pump was. hot enough to ignite the oil, it was usually started by heating, in an open fire outside of the pump house, a plug which was known as a “hot plug”. When this plug was heated it was usually screwed into the top of the cylinder of the engine. At this particular time such a plug was being heated in an open fire near the pump house.
A few minutes after plaintiff arrived he took the hot plug from the fire, screwed it into the engine and then proceeded to the air tanks located in the pump house, and opened a valve which released air into' the engine for the purpose of starting it. Mondell Peters, who was at all times on the south side of the engine, operated the oil and water controls as the air was being released and the engine thereupon started.
After the engine started to run, plaintiff left the air tanks and went tO' the clutch lever, which is located on the north side of the engine almost directly opposite from the place where Mondell Peters was standing. Plaintiff then proceeded to push or pull the clutch lever from left to right in order to engage the clutch and cause water to be pumped. After the clutch was so engaged and water began to flow from the well, plaintiff stood up and waited one or two minutes to determine whether the pump, was operating properly. Plaintiff then asked Mondell Peters if the clutch was in, and upon being told that it was, plaintiff stooped over to pick up a piece of wood lying on the floor beneath the clutch handle in order to place said wood as a prop under the clutch lever to keep' it from vibrating.
Just as plaintiff bent over to pick up the stick of wood something struck him on the left side of his face and head with such force that it immediately knocked him unconscious and caused very serious injuries to plaintiff’s head, left eye, teeth and other parts of his body.
Plaintiff contended that at the time of the injury plaintiff was an “invitee” of defendant while defendant arg-ues that plaintiff was simply a “licensee”.
The lower court in its decision did not pass upon the question of whether plaintiff was an invitee or licensee because it considered that the case could be disposed of on other grounds. The court pretermitted the question and assumed that the plaintiff was an invitee at the time of the accident *383 which assumption was most favorable to plaintiff. This court shall not disturb the decision and shall likewise take the position most favorable to plaintiff, namely that plaintiff was an invitee of the defendant because it is convinced that defendant as owner of the pumping house and engine did exercise ordinary care in maintaining the premises in a reasonably safe condition.
Plaintiff contends that- the doctrine res ipsa loquitur applies to this case and that accordingly the burden is on defendant to show the cause of the accident and absence of negligence.
Judge Provosty, in his opinion in the case of Lykiardopoulo v. New Orleans & C. R., Light & Power Co. et al., 127 La. 309, 53 So. 575, 576, Ann.Cas.1912A, 976, stated; “ * * * jn cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself — res ipsa loquitur — that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege that particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie -case, and the burden is on defendant to show absence of negligence.”
It is true that an accident of this type does not usually occur but the court believes that the plaintiff was in a better position to know or to determine the cause of the accident than was the defendant or defendant’s son, Mondell Peters.'
The evidence discloses that plaintiff was the only person who could have ascertained the cause of the accident. The defendant was not even present in the pump house at. the time the accident occurred and Mon-dell Peters was on the opposite side-of the engine from plaintiff and could not have possibly seen the clutch handle. On the other hand, plaintiff, himself, testified that when he started to pick up the piece of wood which he intended to brace the clutch handle of the engine with, something hit him in the face. He further testified that the stick of wood which he had stooped to pick up was lying under and directly beneath the clutch handle, and that he was “practically over the lever or maybe a little to one side or the other”. Pie further testified that his face “was still above that lever, just a little bit”. That on cross examination he stated “I remember up until then. I started to stoop. It seemed to me like I had my face pretty close to that lever, somewhere around there close”.
We see from the above stated testimony of plaintiff that he had information as to the cause of the accident, and it is not a case where the doctrine of res ipsa loqui-tur applies, that is, a situation where plaintiff cannot be expected to- have any information as to the cause of the accident and the defendant, on the contrary, is assumed to be fully informed on the subject. On the contrary, the plaintiff in this case is the only person who knows or could have known what happened and he has testified under oath what happened. Under such conditions there is no basis whatsoever for application of the doctrine of res ipsa loquitur.
Further, in practically every definition of the doctrine, it is stated that it is limited to a negligence case where the defendant is in control of the instrumentality involved in the accident. Again, the reason for that element of the doctrine lies in the fact that the defendant, in' a proper case, is in a better position to explain the accident than the plaintiff, where it appears that the accident probably was caused by some defect in the instrumentality or some act of negligence in defendant’s operation thereof. In the case at bar, although it is true that the machinery in the pump house was owned by defendant and was under his supervision, it is also true that the portion of the machinery involved in the accident was, at the time of the accident, under the sole control of the plaintiff himself.
*384 Plaintiff in the alternative pleaded that if the doctrine of res ipsa loquitur was not applicable to this action, that the accident which caused the injuries to plaintiff resulted from the following gross acts of negligence on the part of defendant, to wit:
A. In allowing the ground (floor) of his said irrigation pump house to become greasy, slippery, slushy and unsafe on which to stand or walk in the proximity of dangerous machinery.
B. In allowing the crude oil engine, and more particularly the clutch collar and clutch handle attached to the said pump to become so worn, dilapidated and in such a bad state of repair as to render it unsafe to those who may work around and with the same.
C. In allowing the said machinery, and more particularly the clutch collar and handle to become so worn, unfit and unsafe as . to require a prop or brace made of timber for a stabilizer.
D. In allowing the piece of timber used as a prop or stabilizer for said clutch handle to be kept on the greasy or slippery floor or ground of said irrigation pump house beneath or immediately near a dangerously worn or loose clutch collar and clutch handle.
E. In placing unnecessarily long bolts or pins in the spider gear attached to said crude oil engine so that the extended and lengthy end of said pins or bolts might accidentally come into contact with the spokes or the other part of the drive wheel of the said engine and thereby result in the spider gear being forcefully and suddenly kicked back from the wheel and cause the said worn and ill-kept clutch collar to jerk and throw the handle thereof suddenly out of its normal course, thereby becoming a dangerous instrumentality, striking petitioner unexpectedly the severe blow, as aforesaid.
F. In violating his duty to use ordinary and reasonable care to provide a safe irrigation pump house floor and safe irrigation pump machinery for his employees and invitees.
G. In failing to warn petitioner as his employee and invitee of the dangerous condition of said clutch lever, it being an extremely dangerous instrumentality, which fact was known or should have been known to defendant.
The evidence discloses that none of the alleged acts of negligence stated by plaintiff were present in this case at the time of this accident. The testimony establishes the fact that the floor of the pump house where the accident occurred was not greasy, slippery and slushy as contended by plaintiff. It is true that there were some grease spots on the floor but none at the exact location where the accident occurred. Further, the lower Court, itself, examined the pump house and did not find the floor to be greasy' and unsafe, and plaintiff, himself, testified that he merely was stooping over when the accident occurred and had not slipped.
The testimony of experts on crude oil engines, and other witnesses substantiate the fact that the clutch collar and clutch handle attached to said pump were not worn and dilapidated as to render it unsafe. The evidence discloses that the clutch collar and clutch handle were in a fair state of repair and .that there were no broken parts or parts missing from the clutch mechanism. They further stated that clutch handles of this type and kind all vibrate at some time, even when new and that it was a common practice to use a prop or a pulley arrangement to hold up the handle to- prevent vibration. Although the engine was old, it had been kept in a fair state of repair, and this court can find no negligence on the part of defendant in continuing to operate it in that condition or in permitting plaintiff to assist in start - ing it.
It is alleged by plaintiff (see allegation "E” above) that the clutch handle might have become dislodged from its position and struck him, thereby causing his injury. However, the defendant and his son testified that after the clutch is locked in or engaged the clutch handle cannot move horizontally from side to side and it cannot jump out of gear or become disengaged, unless some external force is applied to it. They were supported in those statements by the testimony of Marshall Crowell, Ralph *385 Lyons and Thomas Compton, all of whom were called as witnesses by plaintiff and were qualified as experts with that type of machinery. It is further established by the testimony that the clutch remained engaged and the pump continued to pump water from the moment the clutch handle was first moved to the right by plaintiff, about one and a half or two minutes before the accident occurred, until about two weeks later.
Therefore this Court concludes that even though plaintiff may have been an invitee of defendant at the time of the accident the defendant exercised ordinary care in maintaining the premises in and around the pump house in a reasonably safe condition.
For the reasons assigned judgment appealed from is affirmed at plaintiff’s costs.