HALL, Judge.
This is an action by a workmen’s compensation insurer, as subrogee, to recover $712.11 paid to an employee of its insured for injuries sustained by said employee (on the premises of the defendant) in the course and scope of his employment. The lower court rendered judgment in favor of the plaintiff insurer and the defendant has appealed.
On July 23, 1959, one Frank Couste was ordered by his employers, A. J. Warehouse and Petefils and Williams, to pick up a truck motor which had been repaired by the International Harvester Company. He proceeded to International’s repair shop where he parked his truck approximately twenty feet from the “engine room”. He then accompanied an employee of International Harvester, one Earl Gravois, to the engine room to obtain a hydraulic hoist with which to move the motor from the repair area and load it on the truck.
The engine was resting on a stand, and one Leob, another employee of defendant, screwed an “eye bolt” into its head preparatory to lifting it. In the eye bolt he inserted a hook which was attached to the hoist by a chain. The hoist was on wheels, which allowed the operator to lift an engine and then roll the hoist and the suspended engine from place to place. In order to lift an engine, the hoist operator had to pump a handle back and forth. The speed with which the handle was pumped determined the speed with which the object being lifted would rise.
, The engine in question was lying on its side on the repair stand when^Loeb inserted the hook in the eye bolt. Thereupon Gravois began pumping the hoist to raise the engine to an upright position. As the engine was being raised to a vertical position Couste and Loeb were attempting to steady it with their bare hands.
When the engine reached a vertical position, the hook slipped out of the eye bolt and the engine fell to the opposite side. As it fell, Couste’s wedding ring caught on some protruding part and the engine weight amputated part of his finger.
The plaintiff insurance company paid compensation to Couste in the amount of $712.11 and filed this suit against International Harvester and the Zurich Insurance Company to recover said amount on the theory that Couste was injured as a result of the negligence of International Harvester’s employees. Zurich was never served with a copy of the petition, and it is agreed by all parties that it cannot be held liable in these proceedings.
International Harvester answered the petition, denying negligence on its .part, alleging that Couste assumed the risk of being injured, and alternatively alleging contributory negligence on the part of Couste. Defendant also reconvened for “the full amount of the costs of this litigation”, interest, and attorney’s fees on the theory that it was entitled to coverage as an omnibus insured under the “loading and unloading” clause of the policy of public liability insurance issued by plaintiff and covering vehicles operated by A. J. Warehouse and Petifils and Williams, and consequently was entitled to be reimbursed for all expenses including attorney’s fees incurred by it in defending this suit.
Although the trial judge gave no reasons for judgment she presumably found that the accident occurred through the negligence of defendant’s employees. However, after a careful study of the transcript we are unable to reach a like *479 conclusion. In our opinion plaintiff has not sustained the burden of proving negligence on the part of defendant or its employees. The manifest error doctrine has no application to this case for the reason that all of the witnesses told the same story without conflict or contradiction and the record patently shows that each of them made an honest effort to describe the accident as it actually occurred.
The witnesses agree that the eye bolt was properly screwed into the engine head, that the hook was properly inserted in the eye bolt and that the hydraulic lift was operated by Gravois in the proper manner.
Couste, the injured man, testified as follows:
“BY THE COURT:
“Q. But why did this happen, in this case and not ordinarily? I’m trying to find out, was something defective or something done wrong or why did that engine slip over like that and slip off the stand, so as to injure you?
“A. No, ma’am, it was just one of those things, as far as I could see.
“Q. Was it the manner in which the hoist was being operated; was it the manner in which the chain was attached?
“A. No, ma’am.
“Q. Was it the manner in which the hook and eye was attached, was that the cause of it?
“A. No, ma’am. All of that was hooked up, according to the specifications, the way we pick up the engine. It just happened that it rolled and caught my finger, in a case like that.”
It is clear to us that the cause of the accident was the fact that the hook slipped out of the eye’ bolt allowing the freed engine to fall to the opposite side. Manifestly the hook could not have slipped out without there being some slack in the hoist chain. Was it negligence on the part of Gravois, the hoist operator, to fail to keep the chain taut at all times ?
As we have noted, the engine was lying on its side on the engine rack, the eye bolt was screwed into the engine head, the hook was attached, and Gravois began to raise the engine from its horizontal position to a vertical position on the rack. The testimony shows that at a point during this process of lifting an engine it comes into balance on one edge of its base and after passing the balance point it flips over suddenly into a vertical position from where the hoist lifts it straight up into the air. The testimony further shows that when the engine flips over after passing the balance point its head is travelling faster than the chain and permits some slack in the chain.
Gravois, the hoist operator, testified that although it might be possible to speed up the hoist when it reaches the balance point thereby keeping the chain taut, the proper procedure is to slow the upward movement of the hoist to prevent a sudden bounce or shock as the engine lifts off the stand. Otherwise it was possible, as he had often been warned, that the threads of the eye bolt might strip and cause the engine to fall.
None of the witnesses testified that there was anything wrong in this method of operating the hoist or that Gravois operated it in any unusual or negligent manner. It appears on the contrary that Gravois was acting out of caution rather than through a lack thereof.
It is suggested however, that Gravois should have used some other method in lifting the engine or should have rigged a bridle on the engine in addition to using the eye bolt and hook. The testimony shows that the eye bolt and hook method had been used for years by the defendant with *480 out an accident, and in our opinion it would be going too far to require any additional precautions to be taken.
Plaintiff also suggests that the doctrine of res ipsa loquitur should be applied here. This doctrine is inapplicable for the reason that the injured man, Couste, knew as much about the cause of the accident as any one else. See Lognion v. Peters, La.App., 44 So.2d 381; Shields v. United Gas Pipe Line Company, La.App., 110 So.2d 881; Lyons v. Jahncke Service Inc., La.App., 125 So.2d 619.
We fail to find any negligence on the part of defendant or its employees.
Moreover, the record discloses that Couste had been employed by defendant prior to the time he was injured, and that in fact, he had been employed to work in the same room and had frequently operated the same hoist which was in operation on the date of the injury. The testimony further shows that Couste voluntarily engaged in assisting to hoist the engine on the date of the injury. He was thoroughly familiar with the operation and was well aware of any danger in such operation, and voluntarily exposed himself to whatever dangers were inherent therein. Under these circumstances he assumed the risk involved. See Spears v. American Fidelity & Casualty Company, Inc., La.App., 123 So.2d 513.
With reference to defendant’s reconventional demand, we find no evidence in the record that the defense of this suit was tendered to plaintiff by defendant, and no proof relative to defendant’s expenses and attorney’s fees.
For the foregoing reasons the judgment appealed from is reversed insofar as the main demand is concerned, and plaintiff’s suit is hereby dismissed; the judgment is affirmed insofar as defendant’s reconven-tional demand is concerned; costs in both courts to be borne by plaintiff.
Affirmed in part; reversed in part.