ELEANORE KOTHE v. PETER TYSDALE, *d. b. a.*
RENT-A-TRAILER SYSTEM.
ELIZABETH KOTHE v. SAME.[1]

February 9, 1951.

No. 35,255.

[1]Reported in 46 N. W. (2d) 233.

*C. Alfred Bergsten* and *Perry S. Johnson,* for appellant.

*Fowler, Youngquist, Furber, Taney & Johnson* and *E. A. Danforth,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Two actions for personal injuries and damages sustained by plaintiffs while riding in a car owned by plaintiff Elizabeth Kothe and driven by plaintiff Eleanore Kothe when it collided with a 1942 Universal house trailer attached to and drawn by a car driven by

one Ralph Reed. The accident occurred July 6, 1949, about 8 a. m. on U. S. Highway No. 52 a few miles south of St. Cloud, Minnesota.

The actions are against Peter Tysdale, doing business as the Rent-A-Trailer System, who at the time was engaged in the business of renting and selling trailers of various kinds, with headquarters in Minneapolis and branches in many cities throughout the country. The actions are based upon defendant's alleged negligence in attaching the house trailer to the automobile of Reed and in not providing proper safety chains and other material in making such attachment as required by M. S. A. 169.82. The cases were consolidated for trial. The jury returned a verdict for each plaintiff in the sum of $3,000. This is an appeal from the judgment entered and from an order denying defendant's motion for a new trial.

At the time of the accident, plaintiffs' car was traveling in an easterly direction on the right-hand side of the highway. At the same time, Reed, traveling west, approached plaintiffs with his car and the attached house trailer previously provided him by defendant. As the cars were about to pass, the house trailer suddenly became detached, the safety chains thereon broke, and it veered to the opposite side of the highway directly in the path of plaintiffs' oncoming car, so that plaintiffs' car collided forcibly with it, causing the damages and injuries for which these actions were brought.

Defendant denied liability and alleged that on July 5, 1949, the day prior to the accident, he had sold the house trailer "as is" to Ralph Reed; that he was not responsible for its attachment to Reed's car; that he had not supplied the fittings or equipment for such attachment; and that his employe had protested against Reed's drawing the trailer with the hitch provided thereon and had requested him to have it inspected by a mechanic regularly employed for such purpose before departing on the trip during which the accident took place. Defendant admits that he did furnish Reed with a device known as a "dolly," with safety chains attached thereto, which was to be used to attach the trailer to Reed's car and was to be returned to him after Reed's trip had been completed.

The evidence discloses these facts: On July 5, 1949, defendant delivered to Reed possession of the house trailer, weighing approximately 2,800 pounds, pursuant to several written instruments. One instrument (exhibit E), dated July 5, 1949, appears to be a sale's invoice. It provided for a price of $965 for the trailer and acknowledged receipt of $100 as part of a $250 down payment therefor, with payment of the balance extended over a 15-month period. Thereon it is stated:

"Rental-purchase plan with $100 down and $100 per month until credit accumulation of $250. to be applied as down payment at which time contract will be financed. $6.00 per month deducted for rent."

Another instrument (exhibit D) also included written statements made thereon by defendant's representative as follows:

" '42 Universal. Used for Living. If returned, renter guarantees to * * * Return in _____ Hrs. * * * at 4163 Hiawatha Street Minneapolis Minn. Dolly to be shipped back at once prepaid. $100. pymts per mo. on rental-purchase plan See Invoice dated 7/5/49."

This instrument also provided:

"Signature appearing below * * * agreeing to return trailer when specified above; * * *."

In addition to the foregoing, a conditional sales contract, signed in blank by Reed, filled in by defendant after the accident but not delivered at any time, was offered but not received in evidence. While it substantiates defendant's contention that the transaction was a sale and not a rental, it is conceded that a $250 down payment described therein was never paid, the only cash passing between the parties being the sum of $100, which sum had been mentioned by defendant as a proposed monthly rental for the trailer.

Defendant knew that Reed was about to leave Minneapolis for Minot, North Dakota, with his car and the trailer attached thereto. Reed had affixed to his car a hitch, which included a steel ball 1⅞

inches in diameter, over which a socket might be placed. Defendant furnished a dolly, which was attached to the trailer and included a socket and safety chains. The socket, as the evidence disclosed, was intended to fit over a steel ball two inches in diameter. Defendant's employe undertook to attach the trailer to Reed's car with the described equipment. In doing so, he placed the socket over the steel ball on Reed's car and, after locking it thereon, advised Reed that the attachment was complete and that he might proceed. At no time did he fasten the safety chains or couple the brakes with which the trailer was equipped. Reed was inexperienced in making trailer attachments. He was ignorant of the fact that brakes were furnished or required or should have been connected, and that the socket was too large for the steel ball. He relied upon the judgment of defendant's employe that the attachment as described was sufficient. He denied that defendant's employe had suggested that the attachment should be inspected by a more experienced mechanic.

A member of the state highway department testified that the attachment was improper and unsafe; that the socket furnished was too large for the ball on Reed's car; and that it could easily slip off the ball even after being locked thereon. He demonstrated this several times at the trial. Another member of the highway department testified that the safety chains, which subsequently broke, were tested subsequent to the accident and broke at a pulling pressure of 3,300 pounds; that to receive required approval of the highway department they should have been able to withstand at least 15,000 pounds pulling pressure; and that they are required as an additional precaution in the event a trailer becomes detached from the car transporting it.

Defendant asserts that his status is that of a seller of secondhand goods "as is," and that no liability attached to him as vendor because of any defects therein. Plaintiffs contend that the transaction between defendant and Reed constituted a rental arrangement; that defendant's liability thereunder is that of a

lessor; and that, in any event, whether a sale or a lease, defendant is liable to them as members of the public using the state's highways for his negligence in causing the trailer to be attached to Reed's car in a defective manner and with defective equipment.

■ The authorities seem to clearly establish that either a vendor in a sale or a lessor in a lease of a vehicle intended to be used upon the public highways owes a duty to the public using such highways to exercise reasonable care in supplying the purchaser or the lessee with a vehicle that will not constitute a menace or source of danger thereon; that liability attaches to such vendor or lessor for injuries which are the result of patent defects in the vehicle thus provided, or of defects therein which could have been discovered by the exercise of ordinary care; and that such liability exists irrespective of any contractual obligations between the parties to the original transaction. As to a vendor's liability, see Egan Chevrolet Co. v. Bruner (8 Cir.) 102 F. (2d) 373, 122 A. L. R. 987; McLeod v. Holt Motor Co. 208 Minn. 473, 294 N. W. 479; Jones v. Raney Chevrolet Co. 213 N. C. 775, 197 S. E. 757; Id. 217 N. C. 693, 9 S. E. (2d) 395; Bock v. Truck & Tractor, Inc. 18 Wash. (2d) 458, 139 P. (2d) 706; Flies v. Fox Bros. Buick Co. 196 Wis. 196, 218 N. W. 855, 60 A. L. R. 357. As to a lessor's liability, see Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829; Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 117 So. 72, 61 A. L. R. 1333; Holt v. Eastern Motor Co. 65 Ga. App. 502, 15 S. E. (2d) 895; Milestone System, Inc. v. Gasior, 160 Md. 131, 152 A. 810; Mitchell v. Lonergan, 285 Mass. 266, 189 N. E. 39; Trusty v. Patterson, 299 Pa. 469, 149 A. 717; Collette v. Page, 44 R. I. 26, 114 A. 136, 18 A. L. R. 74; Vaughn v. Millington Motor Co. 160 Tenn. 197, 22 S. W. (2d) 226. While the cases cited involve automobiles or trucks, the principles therein expressed are applicable where, as here, a house trailer was sold or leased for use on the public highways. In McLeod v. Holt Motor Co. 208 Minn. 473, 477, 294 N. W. 479, 481, this court gave approval to Egan Chevrolet Co. v. Bruner

(8 Cir.) 102 F. (2d) 373, 375, 122 A. L. R. 987, *supra,* where the rule was set forth as follows:

"A retail dealer who takes a used truck in trade and undertakes to repair and recondition it for resale for use upon the public highways owes a duty to the public to use reasonable care in the making of tests for the purpose of detecting defects which would make the truck a menace to those who might use it or come in contact with it and in making the repairs necessary to render the truck reasonably safe for use upon the public highways, and is charged with knowledge of defects which are patent or discoverable in the exercise of ordinary care."

Here, any one of the several factors above described would clearly establish the negligence of defendant under the foregoing doctrine. The attachment made by his employe was defective and dangerous. The ball and socket were of such disproportionate size as to easily permit their separation after being locked together. The safety chains were far below the required tensile strength. The brakes were not attached or connected so as to permit their operation from Reed's car. Reed was not advised either of their presence or of the requirements or the need for their being coupled to his car. He was told that the attachment made by defendant's employe was safe and that he could proceed on his trip. Such facts are sufficient to sustain the jury's finding of defendant's negligence. See, M. S. A. 169.67 and 169.82.

The evidence did establish that, before departing for Minot, Reed detached the trailer and subsequently reattached it in the same manner as it had originally been attached by defendant's agent. In addition, he fastened the safety chains which previously had not been fastened. Since defendant knew that Reed intended to take the trailer to Minot the next day, it is not unreasonable to hold that defendant should have foreseen that in reliance upon defendant's greater knowledge of trailer attachments Reed would reattach it in the same manner as did defendant's employe. De-

fendant should not be permitted to relieve himself of the consequences of his negligence by pointing to the subsequent negligence of Reed, which he himself had induced. Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829; Mitchell v. Lonergan, 285 Mass. 266, 189 N. E. 39; Flies v. Fox Bros. Buick Co. 196 Wis. 196, 218 N. W. 855, 60 A. L. R. 357; Prosser, *The Minnesota Court on Proximate Cause,* 21 Minn. L. Rev. 19, 38 to 47. Defendant further asserts that Reed was negligent in furnishing the ball attached to the rear of his car. Reed is not a party defendant. He testified on behalf of plaintiffs. His testimony was that he was without experience in trailers or attachments of this kind and that he relied entirely upon the judgment of defendant's employe. Whether his negligence was a contributing cause of the accident would not affect the liability of defendant for his part in causing the defective attachment to be made. 4 Dunnell, Dig. & Supp. §§ 7006, 7007, and cases cited.

■ Defendant complains of error because his request for a continuance at the close of the testimony submitted on his behalf was denied by the court. After his counsel had rested, he was discharged by defendant because of the latter's belief that he had not properly presented defendant's defenses. Defendant then requested a continuance so that he might retain other counsel. When this was refused, he announced that he would conduct his own case. Plaintiffs had traveled from Detroit, Michigan, for the purpose of the trial. They had gone to considerable expense in procuring witnesses and making adequate preparations therefor. Defendant had had the services of an attorney prior to the engagement by him of counsel who represented him at the trial. The latter was associated at the trial with still another attorney, who now represents defendant. The matter was within the court's discretion. The facts outlined above do not indicate an abuse thereof. 1 Dunnell, Dig. & Supp. § 1710.

■ Defendant asserts that the trial court erred in giving numerous instructions set forth in his motion for a new trial. We

have carefully examined the instructions and find them to be entirely consistent with the legal principles which governed the issues for determination by the jury. To discuss separately each instruction challenged would serve no useful purpose and would unduly lengthen this opinion.

Affirmed.

[1]Reported in 46 N. W. (2d) 243.