125 So.2d 619 (1960)
Ted E. LYONS
v.
JAHNCKE SERVICE, INC. et al.
No. 5144.
Court of Appeal of Louisiana, First Circuit.
December 19, 1960.
*621 H. Alva Brumfield, Baton Rouge, for appellant.
Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, JONES and LANDRY, JJ.
LANDRY, Judge.
The appeal in the case at bar presents for adjudication several interesting questions of law (res nova to the courts of this state), namely, whether the bailor for hire of potentially dangerous movables is under a duty to inspect such movables prior to delivery to bailee, whether such bailor is the warrantor of the safe condition of the object bailed, whether bailor is under a duty to warn of defects in the instrumentality bailed and finally, whether bailor is liable to third parties for injuries resulting from defects of which bailor has failed to give warning.
On October 31st, 1957, plaintiff herein, Ted E. Lyons, an employee of Louisiana Industrial Service, Inc., allegedly received personal injuries when a lift elevator, on which plaintiff was riding incident to his employment on a construction project by his aforesaid employer, fell approximately three stories pinning plaintiff therein and reputedly causing the injuries for which plaintiff seeks recovery in this suit.
The elevator in question was fabricated of several components, the respective manufacturers of which (as well as certain other parties hereinafter named), were made defendants herein. Cited as defendants are American Hoist & Drum Co., a Minnesota corporation, and American Hoist & Derrick Co., a Delaware corporation (manufacturers of an American 50B2G double drum hoist incorporated into the elevator); Westinghouse Air Brake Co., Leroi Division, a Wisconsin corporation (manufacturers of Leroi Model D22g gas engine utilized as a component of the completed elevator); Jahncke Service, Inc., a Louisiana corporation, furnisher of the scaffolding used in constructing the elevator, and Southern States Equipment Co., Inc., a Louisiana corporation, which leased the hereinabove described drum hoist and gas engine to plaintiff's employer, Louisiana Industrial Service, Inc. for use in the device described.
A petition of intervention has been filed herein on behalf of the Travelers Insurance Co., compensation insurer of plaintiff's employer, Louisiana Industrial Service, Inc., wherein said intervenor seeks recovery of the sum of $489.61, paid plaintiff in compensation benefits as a result of the accident and such additional compensation benefits for which said intervenor shall pay or become obligated to pay plaintiff herein, from any and all defendants cast in these proceedings.
The gravamen of plaintiff's complaint is stated in Articles 6 to 13, inclusive, of his original petition as enlarged and added to by Articles 11A, 12A, 12B and 13 (sic) of plaintiff's supplemental and amended petition, which said articles read in full as follows:
"6.
"That on and prior to October 31, 1957, petitioner was employed by Louisiana Industrial Service, Inc. in East Baton Rouge Parish, Louisiana, at the U. S. Rubber Plant project.

*622 "7.
"That prior to said date, petitioner's employer, Louisiana Industrial Service, Inc. leased and rented from defendant, Southern States Equipment Company, an American 50B2G double drum hoist, powered by a Leroi Model D22g Gas engine.
"8.
"That prior to said date, petitioner's employer leased and rented from defendant, Jahncke Service, Inc., scaffolding and platforms for use with the said double drum hoist and gas engine.
"9.
"That the said American 50B2G double drum hoist was manufactured and assembled by defendants, American Hoist & Drum Company and American Hoist & Derrick Company.
"10.
"That the LeRoi Model D22g gas engine was manufactured and assembled by defendant, Westinghouse Air Brake Co., Leroi Division.
"11.
"That on or about October 31, 1957, while petitioner was performing his duties with the said Louisiana Industrial Service, Inc., he entered the lift elevator, and was hoisted to the third floor of the structure upon which he was working; that the hoist suddenly and without warning dropped the lift elevator in which petitioner was riding a distance of approximately 60 feet, pinning petitioner in said elevator, causing serious and permanent injuries as hereinafter set forth.
"12.
"That the said accident was caused by the joint and concurrent negligence of defendants in the design, manufacture, and construction of the drum hoist, the LeRoi Model Gas Engine; and the scaffolding and lift elevator; that the defendants, American Hoist & Drum Company and American Hoist & Derrick Company negligently designed, manufactured and constructed the said drum hoist so that a cog or cogs broke; that the defendant, Westinghouse Air Brake Company, Leroi Division, negligently designed, manufactured and constructed the said gas engine so that it did not properly operate the said drum hoist; and that defendant, Jahncke Service, Inc. negligently designed, manufactured and constructed the said scaffolding and lift elevator without brakes or other safety devices to keep it from falling.
"13.
"That defendant Southern States Equipment Co., Inc. was negligent in failing to inspect the said equipment leased by it, and in failing to warn petitioner of the danger.
"11A.
"That the doctrine of res ipsa loquitur is applicable herein and petitioner specially pleads same.
"12A.
"That the defendants, American Hoist & Drum Company, American Hoist & Derrick Company, Westinghouse Air Brake Company, Leroi Division and Jahncke Service, Inc. and Southern States Equipment Co., Inc. warranted and guaranteed that the equipment herein described was in safe condition and without defects and vices and warranted and guaranteed that the equipment herein described could be used with safety and reasonable and proper care was used in the design, manufacture and construction of said equipment.
"12B.
"That the defendants, American Hoist & Drum Company, American *623 Hoist & Derrick Company, Westinghouse Air Brake Company, Leroi Division and Jahncke Service, Inc. were further negligent in failing to inspect and failing to warn petitioner of the dangerous and defective condition of the said equipment.
"13. (sic)
"That defendant, Southern States Equipment Co., Inc. was negligent in failing to inspect the equipment leased by it and failing to warn petitioner of the danger; that the defendant, Southern States Equipment Co., Inc. warranted and guaranteed that the equipment was in safe condition without defects and vices; that there were defects and vices in the equipment at the time the said equipment was leased to Louisiana Industrial Service, Inc. and at the time of the accident herein sued upon."
To plaintiff's petition as thus supplemented and amended, various exceptions were filed by defendants including, inter alia, an exception of no cause of action tendered on behalf of defendant Southern States Equipment Co. and sustained by the trial court from which ruling plaintiff takes this appeal.
A careful reading of the quoted provisions of plaintiff's petition as supplemented and amended readily discloses that for his cause of action against defendant Southern States Equipment Co., plaintiff alleges said defendant leased to plaintiff's employer certain movable property manufactured by other defendants herein, namely, American Hoist & Drum Co., American Hoist & Derrick Co. and Westinghouse Air Brake Co., Leroi Division. In addition to pleading the doctrine of res ipsa loquitur, plaintiff charges defendant Southern States Equipment Co. with specific acts of negligence which, for all practical purposes, may be stated as follows: (1) failure to inspect the equipment leased; (2) leasing equipment which was defective at the time of the lease and at the time of the accident; (3) breach of warranty implied by the lease agreement to the effect the equipment was in safe condition and free of defects; and (4) failure to warn plaintiff of the defective condition of the leased property
Defendant Southern States Equipment Co. contends plaintiff's petition fails to state a cause of action in that it alleges mere conclusions of law and fails to particularize any specific acts of negligence on defendant's part. Defendant also contends the lessor of movable property is under no duty to inspect the property prior to its lease; that there is no warranty either express or implied under our law with respect to the condition of leased movables and, alternatively, if such warranty does exist it runs in favor of the lessee only; that there is no duty to warn third persons of defects in a leased movable and that the doctrine of res ipsa loquitur is not applicable to the lessor of movables. Defendant finally contends that assuming arguendo negligence on its part or the breach of any obligation owed plaintiff, defendant may, nevertheless, not be held liable herein because its lessee expressly assumed all responsibility for damages arising out of the operation of the equipment during the term of the lease and agreed to hold defendant lessor harmless from the claims of all persons whomsoever, which contractual provision defendant expressly pleads in bar of plaintiff's claim.
We shall first dispose of plaintiff's contention the doctrine of res ipsa loquitur is applicable with respect to plaintiff's claim against defendant Southern States Equipment Co. In this respect, learned counsel for plaintiff relies almost exclusively on our ruling in Day v. National-U. S. Radiator Corp. et al., La.App., 117 So.2d 104, wherein the res ipsa loquitur doctrine was applied to a boiler explosion and the manufacturers of the various component parts of a heating system of which the boiler formed a part. The factual situation presented in the case at bar is vastly different from that in the Day case, supra. In the *624 case presently before us, plaintiff's petition affirmatively shows defendant was not the manufacturer of the allegedly defective component but that other named defendants were the makers thereof and defendant Southern States Equipment Co. merely leased the allegedly defective constituent part to a concern not a party herein.
As we pointed out in the Day case, supra, the principle of res ipsa loquitur in its inception was founded on the premise that where an accident of an unusual nature occurs under circumstances wherein it may be presumed injury would not have occurred but for negligence, an advantage in the nature of a presumption or inference of negligence flows in favor of the injured party. Counsel for defendant urges our rejection of plaintiff's contention the res ipsa loquitur rule is applicable herein because, in the case at bar, defendant was without any degree of control whatsoever over the instrumentality which allegedly caused plaintiff's injury. Although the weight of authority (with which we agree) as appears from our pronouncements in the Day case, supra, now considers that control by defendant over the instrumentality responsible for the injury, is no longer an indispensable prerequisite to invoking the doctrine of res ipsa loquitur, the matter of control is, nevertheless, one of the numerous factors to be considered in determining whether or not the doctrine is applicable to a particular accident.
Although there was no direct control by defendants in the Day case, supra, said defendants were the manufacturers of the numerous constituent parts of the heating system involved therein and on such basis were presumed to know and legally charged with full knowledge and understanding of the construction and operation of the respective components manufactured by each. Because of such superior knowledge such parties are in the best position to explain an accident involving alleged defects in their products. Obviously a defendant who has manufactured and assembled a particular device has superior knowledge of its construction, function and operation not necessarily possessed by a mere owner and bailor thereof. It could not, within reason, be presumed the knowledge of an owner of machinery who bails same for hire is the same as that of the manufacturer of the equipment or so far superior to that of an injured third party the doctrine of res ipsa loquitur may be invoked.
In this connection, we note and quote with approval the following appearing in Volume 38, American Jurisprudence, Verbo Negligence, Page 995, Section 299:
"The res ipsa loquitur doctrine is based in part upon the theory that the defendant in charge of the instrumentality which causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it, and that the plaintiff has no such knowledge, and therefore is compelled to allege negligence in general terms and to rely upon the proof of the happening of the accident in order to establish negligence. The inference which the doctrine permits is grounded upon the fact that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to the defendant but inaccessible to the injured person. If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."
The ability or capacity of a mere owner to explain the alleged malfunctioning of a bailed mechanical device is not on a par with that of the manufacturer of the contrivance involved.
Under the circumstances peculiar to the case at bar, we conclude defendant's position with respect to the accident and the instrumentality allegedly causing same was not such that defendant may reasonably *625 be charged with such superior ability, opportunity or capacity (as compared with that of plaintiff) to explain its occurrence to warrant application of the principle of res ipsa loquitur.
We wish to make it quite clear, however, that our ruling on this issue is restricted solely to our consideration of plaintiff's claim against defendant, Southern States Equipment Co., and is not to be interpreted as necessarily holding said doctrine inapplicable to any other named defendant herein. Applicability of the doctrine with respect to the remaining defendants is not before us for decision at this time and we express no view with respect thereto.
Defendant contends the bailor for hire of movable property does not warrant the condition of the object bailed nor is he under a duty to inspect the property prior to its delivery to bailee or warn third persons of defects therein because under our law there is no express codal authority so providing. In substance defendant contends the only possible authority for holding a bailor for hire of movable property or equipment warrants the safe condition thereof is to be found in Articles 670, 2322 and 2692-2695, inclusive, LSA-C.C. Defendant argues Articles 670 and 2322 are clearly and patently inapplicable inasmuch as they expressly deal exclusively with liability of owners of buildings to third persons injured because of failure to maintain same in good condition and free from defects. Next, defendant maintains Articles 2692-2695 are inapposite considering the warranty therein provided for runs solely in favor of the lessee but even if applicable herein such obligation may be waived as held in Klein v. Young, 163 La. 59, 111 So. 495 and Cheatham v. Bohrer, La.App., 17 So.2d 492. In this latter connection, defendant relies upon the terms of its bailment agreement with plaintiff's employer, Louisiana Industrial Service, Inc., in which said bailee assumed all responsibility for maintenance of the equipment described therein. From the foregoing, defendant reasons the only remaining issue presented herein is whether or not it can be shown there exists some other legal duty imposed on the bailor of movables which may not be contractually waived. In addition, learned counsel for defendant points out that Klein v. Young, supra, recognized that Articles 2692-2695 run only in favor of a lessee and may be waived but also held that the obligations of an owner toward third persons under Articles 670, 2315 and 2322 could not be contracted away. Counsel maintains, however, that subsequent to the decision in the Klein case, supra, the Legislature enacted LSA-R.S. 9:3221 which expressly provides the obligation of lessor to lessee under Articles 2692-2695 may be waived and defendant herein having taken advantage of said authority is immune from suit by plaintiff.
In recapitulation of defendant's position it may be stated defendant contends there is no express law of this state imposing obligations on owners of movables similar to those imposed on owners of immovables under Articles 670 and 2322, LSA-C.C., therefore, other than the general provisions relating to contracts of lease contained in LSA-C.C. arts. 2692-2695, no other authority for imposing such obligations is to be found. Defendant's final contention is that since the only possible source of liability herein is under Articles 2692-2695 (which according to the Klein case may be waived) there is no liability herein because of assumption thereof by defendant's bailee.
At this juncture we wish to point out that we consider the issue of defendant's alleged contractual immunity from liability, predicated upon the terms of the bailment contract, wherein bailee purported to hold defendant harmless from the claims of all persons arising from the use and operation of the bailed property may not for reasons hereinafter shown, be properly considered at this time. It will be recalled we pointed out defendant annexed a copy of the lease or bailment agreement to its exception and upon this basis urges our consideration of said defense. However, the contract is evidentiary in nature and it *626 is the well established jurisprudence of this state that an exception of no cause of action must be disposed of on the face of plaintiff's pleadings. No evidence may be considered by the court in adjudicating the merits or lack of merits of an exception of no cause of action. Assumption by defendant's bailee of liability for damage arising out of the use, operation or maintenance of the leased equipment is a special defense which may be interposed only by answer and cannot be considered by the court in disposing of an exception of no cause of action. The matter upon which defendant relies in this connection is not contained within the four corners of the petition beyond which we may not look in passing upon the exception before us. On this score also we wish to make it abundantly clear we herein express no opinion upon the availability of this defense since the matter is not, at this juncture, before us for decision.
The allegations contained in plaintiff's petition establish the relationship between defendant Southern States Equipment Co., and plaintiff's employer Louisiana Industrial Service, Inc., as substantially and essentially that of bailor and bailee for hire. As contended by counsel for defendant, we agree that warranty of movables bailed may not be predicated upon either Article 670 or 2322, LSA-C.C. because said articles by their express terms, relate and apply only to immovable property.
That the provisions of Articles 2692-2695, inclusive, of our LSA-Civil Code are applicable to the lease or bailment of movables is hardly open to question or argument. Nothing in said articles gives the slightest intention their scope is restricted or limited solely to immovables. On the contrary, we believe the language employed therein sufficiently broad to indicate legislative intent to encompass all contracts of lease, hire or bailment, chattels, as well as real property included. Moreover, we note said Articles 2692-2695, inclusive, appear in Section 2 entitled "Of The Obligations And Rights Of The Lessor", of Chapter 2, denominated "Of Letting Out Things", of Title 9, designated "Lease", while at the same time, we observe Articles 2676 and 2678 of Section 1 entitled "General Provisions" of said same Chapter and Title reading as follows:
"2676. The letting out of things is of two kinds, to-wit:
"1. The letting out houses AND MOVABLES (Emphasis supplied).
"2. The letting out of predial or country estates."
"2678. All corporeal things are susceptible of being let out, movable as well as immovable, excepting those which can not be used without being destroyed by that very use."
We hold therefore that Articles 2692-2695 apply equally to contracts for the lease or bailment of movable property as well as to leases of immovable property and confer upon the bailor and bailee of movables the same respective rights, obligations and duties which arise from agreements to lease real property.
Having concluded liability of a bailor of movables to a third party may not be predicated upon either Articles 670 and 2322, LSA-C.C. (since said articles deal solely with the obligation of an owner of immovables) or pursuant to Articles 2692-2695, inclusive, LSA-C.C. which run only in favor of the lessee or bailee, it follows that unless defendant's liability as a bailor of movables to plaintiff, a third party, may be predicated upon the general tort law of this state as contended by counsel for plaintiff, defendant's exception of no cause of action was well taken and properly sustained by the trial court.
The general tort law of this state is found in Article 2315 LSA-C.C., the pertinent portion of which reads as follows:
"2315. Every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it * * *."
*627 It is too well settled to admit of argument or require citation of authority in support thereof that "fault" as used in said Article 2315 is synonymous with negligence which is defined in Volume 38, American Jurisprudence, Verbo Negligence, Page 642, Section 2, as follows:
"Negligence in the popular sense is the lack of due diligence or care. Actionable negligence, or negligence in the legal sense, has been defined as a violation of the duty to use care. It is doubtful, according to some authorities, whether a more comprehensive definition is practicable. Negligence such as the law takes cognizance of in imposing liability depends upon the existence of various essential elements hereinafter discussed, such as a duty owed by the person charged, and an injury which follows the violation of that duty in such direct and natural sequence that the breach of duty can be said to be the proximate cause of the injury. A definition of actionable negligence in the terms of these elements is not entirely clarifying since the elements themselves require definition. Indeed, one not infrequently encounters the statement that no comprehensive definition of actionable negligence is possible. In any event, negligence in the legal sense is a relative as well as a broad term. Its existence must depend, in each case, upon the particular circumstances which surrounded the parties at the time and place of the occurrence on which the controversy is based. Acts that might be considered prudent in one case may be deemed to be negligent in another. Accordingly, negligence has been defined as the failure to exercise the degree of care demanded by the circumstances, or as the want of that care which the law prescribed, under the particular circumstances existing at the time of the act or omission which is involved. Otherwise stated, negligence consists in the failure to exercise the care which an ordinarily prudent person would use under the circumstances in the discharge of the duty then resting upon him. More particularly, actionable negligence is the failure of one owing a duty to another to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person would not have done, which omission or commission is the proximate cause of injury to the other * * *"
From the foregoing definition, negligence may be succinctly stated to be failure to exercise reasonable care toward a person to whom the duty to exercise reasonable care is owed. We are equally confident no citation of authority is required in support of the proposition that negligence or fault as contemplated in Article 2315 of our LSA-Civil Code encompasses acts of omission as well as commission. Nor is privity of contract between the negligent defendant and the injured plaintiff an indispensable prerequisite to recovery of damages, it being sufficient merely that there be a breach of the duty or obligation of care defendant is found to have owed the injured party and failed to discharge. Marine Insurance Co. v. Strecker, 234 La. 522, 100 So.2d 493; Day v. National-U. S. Radiator Corp. et al., La.App., 117 So.2d 104.
Therefore, under our tort law the question presented is simply whether a bailor for hire of a potentially dangerous movable warrants the condition thereof with respect to third parties, whether the bailor is under a duty to inspect the object prior to delivery and if so, the extent of such inspection and finally, whether or not there is a duty to warn the bailee or third persons of defects therein.
In our own jurisprudence the only cases dealing with the question of liability of a bailor of movables for hire involve instances in which automobiles or motor vehicles are the subject of the bailment. More particularly, we refer to Baader v. Driverless Cars, Inc., Orleans, 10 La.App. 310, *628 120 So. 515, Anderson v. Driverless Cars, Inc., Orleans, 11 La.App. 515, 124 So. 312, Serpas v. Collard Motors, Inc., La.App. Orleans, 178 So. 261; Sears v. Interurban Transp. Co., Inc., 2 Cir., 14 La.App. 342, 125 So. 748; and Bailey v. Simon, La.App. Orleans, 199 So. 185. Said authorities though not necessarily decisive of the issue involved herein are considered apropos because of their recognition of the principle that the lessor or bailor of potentially dangerous movables does indeed owe a duty to the bailee as well as third persons who may be expected to come into contact therewith in the ordinary course of events. Moreover, it appears the Sears case, supra, went so far as to hold (as do the majority of common law jurisdictions) that the duty or obligation incumbent on the bailor of such instrumentalities applies not only to bailments for hire but also gratuitous bailments, the gratuitous bailor being held responsible only for damages resulting from defects of which he had knowledge.
Defendant maintains all of the Louisiana cases cited and relied upon by plaintiff as well as Hertz Drive-Yourself Stations v. Benson, 83 Ga.App. 866, 65 S.E.2d 191, Vaughn v. Millington Motor Co., 160 Tenn. 197, 22 S.W.2d 226; Kothe v. Tysdale, 233 Minn. 163, 46 N.W.2d 233 and O'Brien v. Hendrick Hudson Garage, 250 App.Div. 650, 295 N.Y.S. 686, are inapposite because all deal with instances involving bailment of automobiles and are predicated on the basis of a continuing obligation of warranty during the bailment period in conformity with which the obligation to provide safe and useable equipment does not terminate upon rental of the automobile.
We have diligently read all of the cited cases and find that whereas the obligation of continuous maintenance does appear to have some bearing in automobile cases, it is by no means the principal or exclusive predicate for liability in such instances. A careful reading of the cited cases from our own jurisdiction convinces us the rules therein expounded are not predicated on a contractual obligation of continuous maintenance but on tort liability emanating from negligence of the bailor in placing a potentially dangerous instrumentality in the hands of an intoxicated or incompetent driver.
With respect to those cases from other jurisdictions we note that Kothe v. Tysdale, supra, a Minnesota case, held the bailor of an automobile occupies the same position as a retail vendor of a motor vehicle, both having a duty to deliver the vehicle free of defects discoverable by exercise of ordinary care in addition to the duty of delivering the vehicle in such condition it will not constitute a menace, said duties existing irrespective of any contractual obligation between the parties to the original transaction.
Hertz Drive-Yourself Stations v. Benson, supra, a Georgia case, held incumbent upon a bailor for consideration the duty of ascertaining the automobile bailed had no hidden defects rendering it dangerous to persons within the range of foreseeable operation of the vehicle.
Vaughn v. Millington Motor Co., supra [160 Tenn. 197, 22 S.W.2d 227], a Tennessee case, is authority for the proposition the obligation to avert injury from the use of dangerous instrumentalities is imposed on all who own, control or use such devices and inures to the benefit of all injured thereby. In the Vaughn case, the court said: "This duty does not rest upon the contract of bailment but arises from the obligation which the law imposes upon every man to refrain from acts of omission or commission which he may reasonably expect would result in injury to third persons."
In O'Brien v. Hendrick Hudson Garage, supra, a New York case, an injured third party sought recovery for damages caused by a rented automobile. The principal question involved therein, namely, whether defendant garage, which did not own the automobile, but serviced same and operated the rental business for the owner thereof, should be held liable, was answered in the affirmative.
*629 The common law jurisprudence on the question of liability of a bailor for hire of potentially dangerous movables is summarized in 46 A.L.R.2d 451, as follows:
"The duty of reasonable inspection of an automotive vehicle or machine by a bailor for hire before placing it in the hands of the bailee has been recognized in cases involving injury or death to persons other than the bailee or one standing in his place. Such cases have often taken the view, particularly in circumstances involving automobiles, and similar vehicles designed for use upon the public highways, that a machine of this nature, while not inherently dangerous, may become so if it is in a defective condition, and that the danger may be not only to the bailee or one standing in his place, but to third persons lawfully using the highways. There is also language in some of the cases which refers to an implied warranty by the bailor for hire that the bailed vehicle or machine is reasonably fit for the use intended. In either event, it appears unquestioned that a bailor for hire of an automotive vehicle or machine must exercise ordinary care in inspecting the bailed chattel prior to placing it in the hands of the bailee, and that he will be responsible for injury to or death of third persons proximately caused by a defective condition of the bailed article which a reasonable inspection would have detected."
At 46 A.L.R.2d 443, we find the duty of a bailor of machines to third parties stated thusly:
"As has already been noted in an earlier section a gratuitous bailor is generally held liable only for those defects in an automotive vehicle or machine of which he knows, such standard practically absolving him from liability where the defect is latent. A bailor for hire, on the other hand, is responsible not only for those defects of which he knows, but also for those which he could have discovered in the exercise of ordinary care. This for all practical purposes, means that the bailor, knowing that an automotive vehicle or machine is being hired for the purpose of being used upon the public highways, has the duty of inspecting such vehicle or machine to discover defects in the bailed machine. Such duty, it has often been observed, does not arise solely out of the contract of bailment, but is a general duty imposed by law upon the bailor to refrain from putting upon the highway an instrumentality which might reasonably be expected to cause harm not only to the bailee, but to third persons lawfully using the highway. This is not to say that the bailor for hire will be held liable to the bailee or others for injury or death proximately resulting from any defective condition of the bailed vehicle or machine, but he will be held liable where the injury or death arose from a defect which he could have discovered by the use of ordinary care."
The rationale of the foregoing rules is that the liability thereby established does not arise ex contractu out of the contract of bailment but ex delicto out of the legal duty imposed upon everyone to refrain from negligence that injures another and, more particularly, in such instances, to refrain from negligently putting forth in a public place a dangerous instrumentality or device likely to injure third persons with the intention such instrumentality shall be used by the class of persons to which the injured party belongs
Not only does the foregoing rule appear reasonable and well founded but it is also compatible with our own general tort law and has in effect been recognized in the hereinabove cited automobile cases arising in our own courts, more particularly in Sears v. Interurban Transp. Co., 14 La.App. 342, 343, 125 So. 748, 752, wherein the following appears:

*630 "The general rule is that, where an owner of an automobile knows of its defects and allows another to drive it without warning him of its defects, which are unknown to the driver, he is guilty of negligence and liable for whatever damage is caused by accident in which the defect of the car was the cause."
Moreover, it appears to us that the Klein case, supra, is authority for the proposition that the rights of third persons against owners of premises for injuries resulting from defects therein arise ex delicto because of the owner's obligation to third persons not only because of the provisions of Articles 670 and 2322 of our LSA-Civil Code but also subject to the provisions of Article 2315. In this regard we particularly note the following pertinent language appearing in the Klein case, supra [163 La. 59, 111 So. 497]:
"Articles 2693-2695 are under the title dealing with the contract of lease in the section defining the obligations of the lessor. They import into every contract of lease, where there is no stipulation on the subject, the obligation of warranty on the part of the lessor to keep the building in repair, which obligation is in favor of the lessee only, and has nothing to do with any other person injured in consequence of neglect on the part of the owner of a building to keep it in repair. The lessee may, of course, as a condition of the contract of lease, dispense with the implied warranty in his favor, under articles 2693-2695, in which event, of course, no sublessee can enforce it. But the lessee cannot, by assuming the obligation, absolve the owner of the building from his responsibility to third persons who may be injured in consequence of the owner's neglect of a duty imposed by law in their favor."
* * * * * *
"The fundamental error in the foregoing illustration is in overlooking the distinction between the rights and obligations which are created by law and those which are created by contract. The obligation of every property owner to answer in damages for a failure to keep his property in such condition of repair that it will not be dangerous to other persons is imposed by law, by Articles 670, 2315 and 2322 of the Civil Code. The obligation of a property owner to allow another person to use the property for any particular purpose can be imposed only by contract; and the obligee, in such case, of course, cannot convey to a third party any greater right than the obligee has acquired by virtue of the original contract. If it is stipulated in a contract of lease that the lessee shall make all necessary repairs to the leased premises, a sub-lessee, of course, cannot compel the lessor to bear the expense of any necessary repairs. But that has nothing to do with obligations arising ex delicto, from articles 670, 2315 and 2322 of the Civil Code."
There appears to us no reasonable basis or logical foundation upon which to predicate refusal to grant third parties the same rights against owners of movables as they enjoy against owners of immovables under Article 2315 as interpreted and applied in Klein v. Young, 163 La. 59, 111 So. 495.
Having been called upon to adjudicate the issue herein presented as a matter of first impression, we discern no sound basis for deviation from the well established common law rule which imposes upon a remunerated bailor of a motor vehicle or potentially dangerous machine the duty of reasonable inspection prior to placing the vehicle or machine in the hands of his bailee. In conformity with the weight of authority, we hold a compensated bailor of such movables is responsible to third persons for defects existing therein at the time of delivery to bailee of which he either had knowledge or could have discovered upon exercise of reasonable care.
*631 Such a bailor is not responsible to third persons for defects arising during the bailment period subsequent to delivery to bailee nor is he responsible to third parties for hidden or latent defects existing at the moment of delivery and discoverable only upon minute or extraordinary inspection or examination.
Correlative of the obligation to inspect, a bailor warrants delivery of the device in good condition, suitable for its intended use or purpose and free of defects known to him or discoverable upon reasonable inspection. The foregoing correlative aspects of a contract of bailment for a price, are accompanied by the additional obligation of disclosing such defects to bailee in order that he may guard against injury therefrom not only to himself but also to his employees and all others whose injury may foreseeably occur as a result thereof. It follows, therefore, a bailor for value received who delivers such a vehicle or machine to his bailee possessed of a defect of which he was aware or could have detected by ordinary examination, without warning bailee thereof, is liable in damages to bailee or any third party injured thereby, provided such injury is the reasonably foreseeable result of such failure. It could not be seriously argued an employee, whose duties require working in contact with or proximity to the instrumentality involved, is not within the class of persons whose injury will foreseeably result from operation or use of the defective device.
Learned counsel for defendant argues plaintiff's petition states mere conclusions of law and not facts from which negligence may be deduced. Admittedly the petition herein is rather vaguely and loosely drawn but we note that Article 13 thereof expressly avers defendant was negligent in failing to inspect the equipment. Although in Article 13 the time of the failure to inspect is not stated precisely (that is whether defendant failed to inspect prior or subsequent to delivery) there is coupled with the allegation of such failure, the assertion in Article 12A the equipment was in fact defective at the time of bailment as well as at the time of the accident, and the further averment in Article 12 that the imperfections consisted of defective cogs. In his written reasons for judgment the learned trial judge held plaintiff failed to set forth specific acts of negligence and that the mere allegations of failure to inspect was insufficient in view of plaintiff's failure to allege inspection would have disclosed a defect. He further concluded that plaintiff's remaining allegations merely charged failure of defendant to warn of defects and no such duty was incumbent upon defendant insofar as plaintiff, a third party, to the bailment contract, was concerned. In so doing we believe our learned brother below fell into error for we believe the charge of failure to inspect coupled with the allegation that defective cogs were present in the instrumentality upon delivery, in substance charges defendant with failure to inspect before delivery and delivery in defective condition. Had defendant desired more precise pleading of fact or more specific details the remedy appears to us to have been by way of exception of vagueness pursuant to which plaintiff would have been held to a greater degree of particularization.
The issue upon the trial of this case on its merits is to be purely factual and the question to be decided is simply whether or not the hoist and gas engine were defective at the time of bailment. If the equipment was in fact defective the issue then to be resolved is whether defendant knew of the defects or could have discovered same upon reasonable inspection and failed to warn bailee of their existence. In line with the weight of authority we hold defendant is not liable for defects arising after delivery inasmuch as the petition herein fails to allege express assumption by defendant of the obligation to maintain the equipment during the bailment contract. This latter result follows not because of the terms of the contract of bailment (which we may not consider herein) but because of our holding *632 (in line with the majority view) that a bailor is liable only for defects, of the character above described, existing at time of delivery to bailee.
The conclusions herein reached necessitate reversal of the trial court's judgment and remanding of this matter to the lower court for trial on the merits consistent with the views herein expressed.
Costs of this appeal to be paid by defendant-appellee, Southern States Equipment Co., Inc.
Reversed and remanded.
HERGET, J., recused.