Jack M. CROTHERS, a minor by Ann CROTHERS, his mother and natural guardian, Respondent,

v.

Norman COHEN, d.b.a. Norm's Auto Sales, Appellant.

Nos. C0–85–1507, C4–85–1798.

Court of Appeals of Minnesota.

April 8, 1986.

Review Denied June 13, 1986.

Robert J. Brenner, Minneapolis, for respondent.

Kay Nord Hunt, Mark N. Stageberg, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Norman Cohen, d.b.a. Norm's Auto Sales, appeals from a judgment entered for Jack M. Crothers on a jury verdict and from denial of a motion for a new trial. Cohen argues (1) salesman Maurice Boyd's statement to Jack Crothers, that a car had a rebuilt carburetor and was a good runner, does not constitute an express warranty; (2) a used car dealer has no duty to inspect a car prior to resale, and even if a dealer has a duty to inspect, there is no duty to have one with mechanical knowledge inspect a car prior to resale; and (3) the trial court erroneously instructed the jury on comparative fault. We affirm.

### FACTS

On December 23, 1980, 16-year-old Jack Crothers was seriously injured when the 1970 Dodge he was driving went out of control and crashed into a tree just off 42nd Avenue South in Minneapolis. Crothers had purchased the car (with title going to his brother) the day before from Maurice Boyd, a salesman employed by Norm's Auto Sales.

Crothers commenced this suit, through his mother, asserting breach of an express warranty based on Boyd's representation to Crothers that the 1970 Dodge had a rebuilt carburetor and was a good runner. Crothers also claimed that Norm's Auto Sales was negligent in selling the Dodge to him without inspecting and discovering the obvious defect in the accelerator linkage system that caused the accelerator to stick and the car to crash into a tree.

Following a week-long trial, the jury returned a special verdict finding that it was reasonable for Crothers to believe that Boyd was acting as an agent or employee of Norman Cohen in the sale of the 1970 Dodge; that Boyd made an express warranty upon which Crothers could and did reasonably rely; that there was a breach of the express warranty which was a direct cause of the accident; that Boyd was negligent in examination and inspection of the 1970 Dodge, which was a direct cause of the accident; and that Crothers was negligent in the inspection and operation of the 1970 Dodge, which was a direct cause of the accident. The jury found defendant Norman Cohen 95% negligent, plaintiff Crothers 5% negligent, and assessed damages at $165,000.

Cohen moved for judgment notwithstanding the verdict, or in the alternative for a new trial. These motions were denied and Cohen appeals from the order denying a new trial and the judgment entered against him. These appeals have been consolidated here.

### ISSUES

1. Did the trial court err in permitting the jury to decide whether a salesman's statement to a potential car buyer, that a used car has a rebuilt carburetor and is a good runner, constituted an express warranty?

2. Does a used car dealer have a duty to inspect a used car for obvious defects before reselling it?

3. Is the jury's finding that Cohen breached his duty of care contrary to law?

4. Was the trial court's instruction on comparative fault misleading?

### ANALYSIS

1. *Express Warranty*

Cohen claims that the trial court erred in instructing the jury on the theory of express warranty since, as a matter of law, the statement that a 1970 Dodge was a "good runner" cannot constitute an express warranty. Cohen's salesman told 16-year-old Crothers and his friend that the car had a rebuilt carburetor and was a good runner while they were all looking at the engine and listening to it run. The next day Crothers returned with his brother and purchased the Dodge for $450.

Whether a given representation constitutes a warranty is ordinarily a question of fact for the jury.

No particular words are required to constitute an express warranty, and the representations made must be interpreted as an ordinary person would understand their meaning, with any doubts resolved in favor of the user.

*McCormack v. Hankscraft Co., Inc.*, 278 Minn. 322, 336, 154 N.W.2d 488, 498 (1967). "[A]n instruction on express warranty should be given only if the trial court finds that the evidence supports the giving of such an instruction * * *." *Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 625 (Minn. 1984).

Here, the trial court noted that the circumstances surrounding the sale and the comments about the car raised a factual question as to whether they constituted an express warranty. Once sufficient evidence is found, the jury determines from the context of the transaction whether an express warranty was made:

> It is for the jury to decide from all the evidence of the oral transaction what was the evident purpose and intent of the parties in requesting and making representations.

*Rappaport v. Boyer & Gilfillan Motor Co.*, 239 Minn. 477, 479, 59 N.W.2d 302, 304 (1953). The trial court did not err in submitting this issue to the jury.

In addition, the jury did not misinterpret the law in finding that the used car salesman's statements to Crothers constituted an express warranty. In *Worden v. Peck*, 245 Mich. 237, 222 N.W. 101 (1928), the Michigan Supreme Court affirmed a circuit court's finding that a used car salesman's statements, that a car was in A–1 condition and that it had a complete overhaul, constituted an express warranty. *Id.* at 238–39, 222 N.W. at 101–02. The Michigan court stated:

> The representations went beyond mere sales puffing.
>
> There was an express affirmation of a particular condition of the automobile and not a mere opinion. The affirmation purported to be based upon facts known to the agent making the sale, related to

the condition of the automobile, and were well calculated to induce its purchase. *Id.* at 239, 222 N.W. at 102.

Statements using the word "good" in referring to the condition of personal property have been found to create an express warranty in a number of cases. *See Saunders v. Cowl*, 201 Minn. 574, 277 N.W. 12 (1938), and cases cited therein. *Cf. Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34 (7th Cir.1980) (representations that business machines were of "high quality," could not be considered an express warranty).

### 2. *Duty to Inspect*

■ Cohen asserts that a used car dealer has no duty to inspect a used car before its resale to determine whether it has defects. In the alternative, Cohen asserts that a used car dealer has no duty to discover anything but patent defects in cars purchased for resale.

The trial court defended its instruction on Cohen's duty of care when it denied him a new trial:

> The key issue here is whether the seller had a duty to inspect or repair the used 1970 Dodge. The Minnesota Supreme court states "that either *a vendor in a sale or a lessor in a lease of a vehicle intended to be used upon the public highways owes a duty to the public using such highways to exercise reasonable care in supplying the purchaser or the lessee with a vehicle that will not constitute a menace or source of danger thereon*; that liability attaches to such vendor or lessor for injuries which are the result of patent defects in the vehicle thus provided, or of defects therein which could have been discovered by the exercise of ordinary care ..." *Kothe v. Tysdale*, 233 Minn. 163, 168, 46 N.W.2d 233, 236 (1951).
>
> Given this duty, the factual question for the jury was whether the defect in the 1970 Dodge was a patent defect which would have been discovered by ordinary care. The instruction given to the jury was:

"Seller has a duty to use ordinary care to discover obvious defects which would constitute a menace or source of danger. The seller is not required to disassemble the vehicle to make this observation."

The instruction was properly given to the jury, letting them determine whether the defect was patent or latent and whether Defendant's salesman used ordinary care. The jury's answer to the special interrogatory on this issue found that the absence of the c-ring on the accelerator linkage system was a patent defect that would have been discovered by ordinary care. The theory of negligence was properly put to the jury and the evidence reasonably supports their finding. (Emphasis supplied)

The trial court properly instructed the jury on the duty of a vendor of vehicles based on the Minnesota Supreme Court's description of that duty in *Kothe v. Tysdale*, 233 Minn. 163, 46 N.W.2d 233 (1951).

### 3. *Duty of Care*

Cohen also argues that if *Kothe* controls, it does not require that a mechanic inspect the vehicle for patent defects. If Cohen had no duty to have someone with mechanical knowledge inspect the car's engine, the testimony cannot support a finding of negligence. The only testimony describing the defect as patent was as follows:

Q: [Plaintiff's attorney-Mr. Brenner] Was this failure to have a stopper something that would be immediately apparent to a mechanic upon looking at the engine?

A: [Engineering expert-Mr. Carroll] Yes.

Mr. Carroll, an accident reconstructionist and civil engineer, as well as the mechanic who accompanied him on his inspection of the vehicle, each noticed the missing stopper immediately upon examining the car's engine. Carroll rendered his opinion as to the cause of accident:

The cause of the collision was the failure of whoever installed the carburetor to properly adjust the linkage, in other words, to insert that pin, the c-ring and the spring so that the linkage was in its proper orientation.

Carroll testified that the rebuilt carburetor was probably installed a year or more before the accident, quite some time before it was purchased for resale.

Boyd, Crothers and his friend did not observe this defect after looking at the engine. None of them claimed any mechanical expertise. Neither Boyd nor Norm's Auto Sales had the car inspected by a mechanic before it was resold.

■ The jury's finding that Cohen's failure to inspect and discover the defect, obvious to one with mechanical knowledge, was apparently based on its application of the law of due care. Based on the facts, the jury could have found that a reasonable person with Cohen's duty of care would have had someone with mechanical knowledge inspect the car for obvious defects before reselling it to a member of the public.

■ The trial court properly limited the car dealer's duty by instructing the jury that "[t]he seller is not required to disassemble a vehicle to make such an observation." *See Egan Chevrolet Co. v. Bruner*, 102 F.2d 373 (8th Cir.1939).

The rule does not mean—as the appellant seems to fear—that a dealer in used motor vehicles, who undertakes to recondition a truck for resale, becomes virtually an insurer of the safety of the truck he sells, nor does it mean that he is required to disassemble an entire truck to examine each of its parts. It does mean that he must use reasonable care to ascertain whether the truck is equipped with the minimum essentials for safe operation, * * *.

*Id.* at 375–76.

### 4. *Comparative Fault Instructions*

■ Cohen further asserts that the trial court erroneously encouraged the jury to aggregate his fault under the warranty theory and the negligence theory rather than determining comparative fault under each theory separately. This error was not

assigned in the motion for a new trial. Since we affirm the jury verdict finding that Cohen breached an express warranty and such a finding independently supports the damages awarded, we need not specifically address this issue. Further, trial court instructions are not ordinarily reviewable where there was no objection to them at trial. *See* Minn.R.Civ.P. 51.

### DECISION

1. An issue of fact was presented as to whether the statements of a used car salesman, that a car had a rebuilt carburetor and was a good runner, constituted an express warranty.

2. The trial court properly instructed the jury as to a used car dealer's duty to inspect vehicles for obvious defects prior to resale.

3. The jury's finding that the car dealer breached its duty of care is not contrary to law.

4. Appellant cannot now challenge jury instructions he agreed to at trial and did not challenge in his motion for a new trial.

Affirmed.